FRANCISCA MERLO, Defendant in Error, *vs.* THE JOHNS-
TON CITY AND BIG MUDDY COAL AND MINING COM-
PANY, Plaintiff in Error.

*Opinion filed April 19, 1913.*

1. STATUTES—*effect of unconditional repeal of a statute.* If a
statute giving a special remedy is unconditionally repealed with-
out a saving clause in favor of pending suits all actions must stop
where the repeal finds them, and if final relief was not granted be-
fore the repeal went into effect it cannot be granted afterwards.

2. SAME—*general rule where an act is repealed pending appeal.*
Where a case is appealed and pending the appeal the legislature
changes the law upon which the action is based, the appellate tri-
bunal must, as a general rule, dispose of the case under the law
in force when its decision is rendered.

3. SAME—*effect where a statute is expressly repealed without
substituting anything for it.* Where a statute is expressly repealed
by the legislature and nothing is substituted for the statute re-
pealed, the effect is to obliterate such statute as completely as if it
had never been passed.

4. SAME—*effect of repeal of statute by amendment.* Where an
amendatory act provides that a certain act or certain section of
an act shall be amended so as to read the same as repeated in the
amendatory act, all such portions of the old act or section as are
not repeated in the new act are repealed without any express words
for that purpose, but such portions of the old law as are retained,
either literally or substantially, are regarded as a continuation of
the old law and not as a new enactment.

5. SAME—*effect where statute is repealed by general revision.*
Where a statute is revised and re-written, only such provisions of
the old act as are omitted from the revised act are repealed, and
all provisions of the old act which are retained in the new one are
regarded as having been continuously in force, without any hiatus
between the going out of the old law and the coming in of the
new, as both events happen at the same instant.

6. SAME—*rule as to repeal by implication.* A repeal by impli-
cation takes place when a later act is found to be so repugnant to
a former act that both cannot stand, and when the inconsistency is
established the later act has full force and displaces whatever is
repugnant to it in the former act.

7. SAME—*fact of repeal, and the extent thereof, is a judicial
question.* Whether a given act repeals a former one, and if so, to

what extent, is a judicial question, and a legislative declaration that an act is repealed is merely a declaration of the legislature upon a judicial question and is not binding upon the courts.

8. SAME—*when rights or claims accruing under the old law are saved by the general saving statute.* Unless contrary to the manifest intention of the legislature that an act revising another shall apply retrospectively to pending claims or actions, or unless the exclusion of such claims or actions from the effect of the new act would be clearly repugnant to the context of such act, the general saving provisions of section 4 of chapter 131 of the Illinois statutes apply, and claims or actions arising under the old act are saved for determination. (*People* v. *Zito,* 237 Ill. 434, followed; *Mix* v. *I. C. R. R. Co.* 116 Ill. 502, *Holcomb* v. *Boynton,* 151 id. 294, and *Vance* v. *Rankin,* 194 id. 625, distinguished.)

9. SAME—*rule where statutes are intended to modify procedure, only.* No one has a vested right in any particular remedy or mode of procedure for the redress of grievances, and the legislature has full power to change such remedy or procedure and the new statute may be applied to pending cases.

10. MINES—*Mines and Miners act of 1911 is a general revision of the old act.* The Mines and Miners act of 1911 was intended as a general revision of and substitute for the Mines and Miners act of 1899, and while they differ in some particulars, both acts are intended to accomplish the same general purpose in the discharge of the constitutional duty of the General Assembly and both are subject to the same general rules of construction.

11. SAME—*provisions of sections 18 and 19 of the Mines and Miners act of 1899 are continued in the act of 1911.* The provisions of sections 18 and 19 of the Mines and Miners act of 1899 (upon which the counts of the declaration in this suit are based) are continued substantially in sections 14 and 21 of the revision of such law in 1911, and causes of action based upon a violation of such provisions are therefore continued for determination under the act of 1911, whether suit was or was not commenced prior to the taking effect of such act.

12. SAME—*effect of substitution of personal representative for the widow as plaintiff.* The provision of section 29 of the Mines and Miners act of 1911 substituting the personal representative for the widow as the proper person to bring the action is a mere matter of procedure and does not affect the substantial rights of the parties.

13. SAME—*when effect of change of beneficiaries in Mines and Miners act of 1911 is not involved.* The question of the effect of the omission in the Mines and Miners act of 1911 of the lineal heirs and adopted children of the deceased miner from the class of per-

sons having a beneficial interest in the recovery of damages for his death under the terms of the act of 1899 does not arise in a suit begun by the widow under the act of 1899 and which was pending on appeal when the act of 1911 took effect, where the deceased left only a widow, who would be entitled, under either statute, to the entire amount recovered.

14. SAME—*personal representative may be substituted as plaintiff by motion in a court of review.* Where a judgment has been recovered by the widow and the cause is pending in a court of review at the time the Mines and Miners act of 1911 took effect, the court of review may, on motion, substitute the personal representative of the deceased miner in the place of the widow as the plaintiff in the action.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Williamson county; the Hon. W. W. DUNCAN, Judge, presiding.

DENISON & SPILLER, (MASTIN & SHERLOCK, of counsel,) for plaintiff in error.

HARTWELL & WHITE, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Francisca Merlo brought an action on the case against the Johnston City and Big Muddy Coal and Mining Company to recover damages resulting from the death of Frank Merlo, her husband, basing her right to recover on an alleged violation of sections 18 and 19 of the Mining law of 1899. A judgment for $1500 was recovered against the coal company, which has been affirmed by the Appellate Court for the Fourth District. The record has been brought to this court by a *certiorari*.

The declaration contains five counts, all of which are based on alleged violations of the statute. In the several counts of the declaration it is charged that the entries, rooms and working places where the deceased was employed were in a dangerous condition, caused by an accu-

mulation of deleterious air, standing powder smoke and gas, which were liable to, and did, explode, causing the death of plaintiff's intestate. It is alleged that this dangerous condition was caused by a willful failure on the part of the coal company to force currents of air into the working place of the deceased, and willfully permitting him to enter the mine to work, not under the direction of the mine manager, before all conditions had been made safe. In the fifth count it is charged that the company willfully failed to build stoppings in the cross-cuts connecting the inlet and outlet air courses in a substantial manner, with suitable material, but that such stoppings were constructed of lumber which had become old and rotten, thereby interrupting the passage of air to the working place of the deceased, causing an accumulation of deleterious air, a consequent explosion and the death of plaintiff's intestate, and that the statute was thus violated by a willful failure to construct proper and suitable stoppings in the cross-cuts.

The deceased was killed in an explosion in the mine of plaintiff in error November 29, 1909. This suit was commenced April 22, 1910. The cause was tried and final judgment rendered in the trial court June 22, 1911, from which an appeal was prosecuted to the Appellate Court. In 1911 the legislature passed an act revising the laws relating to coal mines, which went into effect on July 1 of that year, which purports to repeal the act on the same subject of April 18, 1899, which was the statute upon which this suit is based. The act of 1911 contained no saving clause as to pending proceedings. Plaintiff in error contends that the law upon which the suit is predicated having been repealed without a saving clause as to pending suits, the right of action is extinguished. Plaintiff in error also insists on a reversal for other reasons. Without going into an examination of the other errors relied upon, we are satisfied with the determination of all those questions by the Appellate Court. The question raised in regard to the effect of the

act of 1911 upon the right of defendant in error to prosecute her suit to final judgment is of importance not only to the parties to this record, but to all other litigants who are interested in claims growing out of alleged violations of the old law which were not finally determined before July 1, 1911.

A careful examination of the thirty-one sections of the Mining act of 1911 indicates that it was intended by the legislature as a general revision of the law applicable to coal mines and subjects relating thereto, and such intention is manifest from the title of the act. There can be no question that this act was designed as a substitute for the act of 1899. A comparison of the two acts by sections will show the different points of agreement and conflict between them. Substantially all of the subjects covered by the old act will be found in the new, but in the later act the whole subject has been re-cast and re-written, with no attempt to follow the arrangement of the matter in the old act. While differing in the details, both acts relate to the same general subject and are intended to accomplish the same general purpose. They were both passed in discharge of the constitutional duty of the General Assembly to pass such laws as may be necessary for the protection of operative miners and the safety of coal mines. Both acts are subject to the same general rules of construction. It is not necessary to the decision of the question involved in the case at bar to attempt to point out all of the differences between the new and the old acts. It will be sufficient for our present purpose to point out such differences as appear to have a bearing upon the question here involved, which we shall do hereinafter. The ultimate legal question to be determined upon this record is whether the act of 1911 so far repealed the former statute as to deprive defendant in error of all rights under the prior law.

The effect of repealing statutes upon pre-existing causes of action has been frequently considered by the courts of

this and other jurisdictions and certain rules applicable thereto have become well established. It is a well settled rule of the common law that if a statute giving a special remedy is unconditionally repealed without a saving clause in favor of pending suits, all actions must stop where the repeal finds them, and if final relief has not been granted before the repeal went into effect it cannot be afterwards. (*South Carolina* v. *Gaillard,* 101 U. S. 433.) Where a case is appealed and pending the appeal the legislature changes the law upon which the action is based, the appellate court must dispose of the case under the law in force when its decision is rendered. (Cooley's Const. Lim.—2d ed.—381.)

There are different methods by which the repeal of a prior statute may be effected. It may be repealed by an express declaration of the legislature declaring that the act is repealed. Where the legislature passes a repealing act and nothing is substituted for the act that is repealed, the effect is to obliterate such statute as completely as if it had never been passed. Statutes may be repealed in whole or in part by amendment. If the legislature enacts an amendatory statute providing that a certain act or a certain section of an act shall be amended so as to read as the same is repeated in the amendatory act, all such portions of the old act or section as are not repeated in the new act are repealed without any express words for that purpose, (*More* v. *Mausert,* 49 N. Y. 332; *Breitung* v. *Lindauer,* 37 Mich. 217;) but such portions of the old law as are retained, either literally or substantially, are regarded as a continuation of the old law and not as a new enactment. (Hurd's Stat. 1911, chap. 131, sec. 2; *Cushman* v. *Bonfield,* 139 Ill. 219; Lewis' Sutherland on Stat. Const. sec. 237, and cases there cited.) Statutes may also be repealed by a general revision. Where the law on a particular subject is revised and re-written, only the provisions of the old law which are omitted from the revised act are repealed and all provisions of the old law retained in the new act are re-

garded as having been continuously in force. (*Mette* v. *Feltgen*, 148 Ill. 357.) The rule in respect to repeals by revision is the same as repeals by amendment. There is no hiatus between the death of the old and the coming in of the new law. Both events happen at the same instant and the power that destroys the old gives life and vitality to the new. Finally, repeals may be by implication. This happens when a later act is found so repugnant to a former one that both cannot stand together. The inconsistency being established, the later act in date or position has full force and displaces whatever in the precedent law is repugnant to it. (*Fowler* v. *Pirkins*, 77 Ill. 271; *Pavey* v. *Utter*, 132 id. 489.) Whether a given act of the legislature repeals a former one, and if so to what extent, is a judicial question, and a legislative declaration that an act is or is not repealed is only a declaration of the legislature upon a judicial question, which is not binding on the courts. *United States* v. *Claflin*, 97 U. S. 546.

Each of the above methods of repeal is governed by rules peculiarly applicable thereto, and it is therefore necessary to keep in mind these distinctions in order to correctly understand and apply the authorities to a particular situation. We have already pointed out that the act of 1911 was a general revision of the prior law, from which it follows that in determining whether the later act repeals the former, reference must be had to the rules applicable to repeals by revision. If upon an examination it is found that the particular provisions of the old statute upon which defendant in error predicates her cause of action are continued, in substance, in the new act, then, under the rules already announced applicable to repeals by revision, such portions of the old law have not been repealed and any rights that accrued thereunder will not be disturbed by the subsequent passage of the revisionary act. This is true under common law rules of construction as well as under section 2 of chapter 131, *supra*.

The declaration in the case at bar contains five counts. The second and fourth are based on section 18 of the old law, and the first, third and fifth are based on section 19. By comparing section 18 of the old law with section 21 of the new and section 19 of the old with section 14 of the new, it will be seen that the provisions of the old law upon which the declaration is predicated are substantially repeated in sections 14 and 21 of the revisionary act. This conclusion is particularly true with respect to the second, third and fifth counts, where it will be found that the provisions of the old law which are alleged to have been violated are those continued in the sections of the new law above referred to. From a comparison of the two statutes it seems clear that it was the intention of the legislature to continue in force those provisions of the law upon which defendant in error bases her cause of action, and whatever conclusion might be reached in regard to other provisions of the old law, so far as the case at bar is concerned, the new act does not affect its legal status.

But aside from this, we have a general saving statute which furnishes the true guide for determining the effect of a repealing statute upon existing rights. That is found in chapter 131 of Hurd's Statutes. Section 1 of that act provides that in the construction of all statutes now in force or which may hereafter be enacted the following rules shall be observed, "unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute." Section 2 of the act provides that the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions and not as a new enactment. Section 4 of said act is as follows: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right

accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act."

The effect of the foregoing statute as a general saving statute has several times been under consideration in this court. *Farmer* v. *People,* 77 Ill. 322, and *Roth* v. *Eppy,* 80 id. 283, were cases arising under the Dram-shop act of 1872. The former was a criminal prosecution for unlawfully selling intoxicating liquor to a minor, and the latter a suit in tort by a wife for damages resulting from the intoxication of her husband, caused by the sale of liquor to him by the dram-shop keeper. In *Roth* v. *Eppy* the suit was not commenced until after the general revision of our statutes, in 1874, went into force, and in *Farmer* v. *People* final judgment had not at that time been rendered, and it was held in both cases that the right of action was saved by sections 2 and 4 of the general saving statute above quoted.

*Provident Hospital and Training School* v. *People,* 198 Ill. 495, and *Connell* v. *Crosby,* 210 id. 380, are cases illustrating the application of the general saving statute to a right of action by the people for an inheritance tax. Under the law in force at the time when the respective owners of the estates died, bequests for educational, religious and charitable purposes were not exempt from the payment of

inheritance taxes. Subsequently, in 1901, the statute was amended so as to exempt these classes of bequests. The question involved in both of the above cases was whether the right of the people to enforce the payment of the inheritance tax was saved by the general saving statute above referred to, and it was held that section 4 of that statute furnished the guide for determining the effect of the amendatory act of 1901 and that the right of action on behalf of the people was saved by that statute.

This statute was again under review in *People* v. *Zito,* 237 Ill. 434. That was a suit begun and prosecuted on behalf of the people to final judgment under sections 14a and 14b, which were added in 1903 to the act of 1901, regulating the practice of pharmacy. After the cause had been argued and submitted to the Appellate Court for decision the legislature amended said sections by an act which went into force January 17, 1908. After the cause reached this court, and before the submission thereof, plaintiff in error made a motion to have the judgment reversed and the suit abated on the ground that the amendatory act of 1908 operated as a repeal of the sections under which the prosecution was instituted. This court held that the right of the people to sue for and collect the penalty for a violation of sections 14a and 14b was saved by sections 2 and 4 of chapter 131, *supra,* and the motion to dismiss was overruled and the conviction affirmed.

In the opinion of this court filed in the *Zito case, supra, Mix* v. *Illinois Central Railroad Co.* 116 Ill. 502, *Holcomb* v. *Boynton,* 151 id. 294, and *Vance* v. *Rankin,* 194 id. 625, were discussed and distinguished. The *Mix case,* in 116 Ill., and the *Vance case,* in 194 Ill., were taken out of the operation of the saving statute by the fact that in both those cases the later statutes involved, by express provisions were made applicable to prior pending proceedings as well as to those commenced after the new act took effect. Under section 1 of the saving statute the rules of construction there

prescribed have no application where it is the manifest intent of the legislature that the new act shall apply retrospectively to pending claims or actions or where the exclusion of such claims would be repugnant to the context of the new act. In *Holcomb* v. *Boynton, supra,* the new act took away the jurisdiction of the county court in mechanics' lien suits, and there was no saving clause in respect to cases then pending in county courts. It was held that the county court could not proceed after the new act took effect, because its jurisdiction was gone. That case did not involve the right of the party in such pending lien suit to continue the prosecution of his claim in any other court having jurisdiction. None of these cases are in conflict with *Farmer* v. *People, supra, Roth* v. *Eppy, supra, People* v. *Zito, supra,* and the other cases above cited, where this court gave full force to the provisions of the saving statute whenever a proper occasion for its application has arisen. The doctrine of these cases should not be confused with the rules which are intended to modify the procedure of our courts. It is a well established rule that no one has a vested right in a particular remedy or mode of procedure for the redress of grievances, and the legislature may change these, and the changed procedure may be applied to pending causes. *People* v. *Peacock,* 98 Ill. 172, *Wood* v. *Childs,* 20 id. 209, *Smith* v. *Bryan,* 34 id. 364, *Winslow* v. *People,* 117 id. 152, and *Woods* v. *Soucy,* 166 id. 407, are all cases involving statutes which merely changed the procedure, and it was held in these cases, in accordance with the general rule on the subject, that such statutes should be complied with, as far as practicable, in all pending and undetermined causes. In none of them were the pre-existing rights of the parties disturbed.

Other States having similar saving statutes have followed the rule announced in the foregoing decisions of this State. *State* v. *Boyle,* 10 Kan. 113, was a criminal prosecution under section 3 of an act relating to settlers on land

without any legal right thereto. (Gen. Stat. of Kan. chap. 96, p. 953.) This act was in force at the time the prosecution was commenced, but it was repealed before defendant was sentenced or before any judgment was rendered against him. The repealing statute is entirely silent as to whether rights or remedies already accrued and prosecutions already commenced under it should be saved and preserved or should be abrogated and destroyed. (See Laws of Kansas of 1871, p. 29.) At the time the repealing statute was passed there was in force in the State of Kansas an act concerning the construction of statutes, section 1 of which provided as follows: "The repeal of a statute does not revive a statute previously repealed, nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred nor any proceeding commenced under or by virtue of the statute repealed." (Gen. Stat. chap. 104, p. 998.) In holding that the statute just quoted saved all rights under the repealed statute, the Supreme Court of Kansas, on page 117, said: "This statute changed the construction that would otherwise and at common law be given to said repealing statute. When the legislature passed said repealing statute it must be presumed that they had in contemplation every other statute of the State which could in any manner affect repeals, and that they passed such repealing statute with reference to said other statutes; and it must be assumed, in the absence of anything to the contrary, that they intended that the repealing statute should operate to just the extent that the laws then in force provided that repealing statutes should operate, and no further. If this be so, then the statute under which this prosecution was had was not absolutely repealed by said repealing statute, but was kept in force, so far as it affected cases like the one at bar, by said saving statute. It has been decided in this court that the legislature had the power to pass a general saving statute, which shall have the force and effect to save rights and remedies except where the repealing statute itself clearly

shows that it was not the intention of the legislature that such rights and remedies should be saved,"—citing *Willetts v. Jeffries,* 5 Kan. 573, and *Gilleland v. Schuyler,* 9 id. 569.

*Harris* v. *Town of Townsend,* 56 Vt. 716, was an action to recover for personal injuries received while traveling on the highway within the town. The action was based upon a statute. Subsequently, and before the suit was determined, the statute giving the right of action was repealed. The question as to the effect of repealing the statute was raised by motion to dismiss the suit. The court, speaking by Royce, C. J., said: "The effect of repealing statutes upon pre-existing causes of action has been frequently considered by the courts of England and this country, and certain rules have become well established that are applicable to certain classes of action, such as the right given by statutes to sue for and recover penalties, and the right of the State to prosecute for statutable offenses. The unconditional repeal of the statute which conferred the right to sue for penalty constitutes a legal bar to the prosecution of such suit, and a like repeal of the statute constituting an offense suspends the right of the State to prosecute for its commission. Here it is claimed that the plaintiff had a vested right to compensation, and hence the legislature had no constitutional power to divest him of that right. What constitutes a vested right has always been a vexed question and no definition applicable to all claims of that character has been promulgated, and it is probably impossible to give one that would be. The question has often been considered in construing laws affecting the remedy for the enforcement of rights. Where the right is admitted, it is familiar law that the method and mode of its enforcement may be modified and changed by legislative enactment, but the party having the right cannot be constitutionally deprived of all remedy for its enforcement. We do not find it necessary in this case to decide whether the plaintiff had any such vested right as the statute passed in 1880 would be inoperative to

deprive him of or not. The right of the plaintiff to maintain the action is preserved by section 28 of chapter 1, R. L. That provides that the repeal of an .act shall not affect a right accruing, accrued, acquired or established before the time when the repeal takes effect. Immediately upon the happening of the accident the plaintiff acquired the right to demand compensation of the town for damages sustained. His ability to enforce that right was dependent upon his ability to prove that he had given the notice required to the town; that the highway was one that the town was under obligations to keep and maintain in repair; that it was out of repair, and that his own negligence or want of care did not contribute to the happening of the accident. His right of action had accrued. His right to recover was dependent upon the proof to be made. He had no perfected right to compensation and could have none until the questions upon which the liability of the defendant town depended should be legally determined. His right was not an inchoate one in the sense in which the word is used in some of the cases where it has been held that an inchoate right was lost by the repeal of the statute. His right was as perfect as any can be where the question of its enforcement is open to contention and litigation. Where a corporation appropriates the property of a citizen under a statute conferring the authority, the repeal of the statute giving the authority does not affect the right to compensation for the property so appropriated. Here the plaintiff suffers damage to his person in consequence of the non-feasance .of the defendant town. Upon principle it would seem that the right of a party to compensation where he has suffered in property or person should not be affected by the repeal of the statute imposing the liability, any more than it does where the party had been damnified by some positive act of the corporation. The language of the above section, we think, comprehends rights of this character, and it is evident to us that the legislature did not intend that claims for damages resulting from the

negligence of towns should be barred by the repeal of the law which prescribes their duty and their liability if any neglect to perform them."

*Gorman* v. *McArdle*, 67 Hun, 484, was determined without reference to a saving statute. That was an action on the case for a personal injury caused by plaintiff jumping from the fourth-story window of defendant's manufacturing establishment, where the plaintiff was employed, during a fire which consumed the building. The action was based on a negligent omission to provide fire-escapes, as required by a statute of New York. After the injury, and before the suit had been terminated, the statute requiring fire-escapes was repealed by chapter 398 of the laws of 1890. The court held that the repeal of the statute did not extinguish plaintiff's right of action for an injury caused by defendant's negligent omission to provide fire-escapes as prescribed by the statute. It was held that the failure to comply with the statute in respect to equipping the building with fire-escapes was an act of negligence *per se,* and that the plaintiff's right to recover for such negligence was vested in him, and he could not be deprived of his right of action by repeal of the statute. See *Steamship Co.* v. *Joliffe,* 69 U. S. 450.

*Edmundsen* v. *Kentucky Central Railway Co.* (Ky.) 28 S. W. Rep. 789, and *Wright* v. *Woods,* 96 Ky. 56, were cases where widows whose husbands had been killed by negligence brought actions to recover compensation. Under the statute in force at the time of the deaths suit was required to be brought in the name of the widow. Before the suits were terminated the State of Kentucky adopted a new constitution, which provided that all suits of that character should be brought in the name of the administrator of the deceased. The Supreme Court of Kentucky held in both cases that the adoption of the new constitution had no effect upon the rights of the widows to prosecute to final judgment their respective claims and that the constitution

did not have the effect of repealing the former statute as to pending suits.

A saving statute of Indiana provided: "Whenever an act is repealed which repealed a former act, such act shall not thereby be revived unless it shall be so expressly provided. And the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability." (Rev. Stat. 1881, par. 248.) Another statute of the State required the owners or operators of coal mines to supply the workmen therein with suitable timbers for props and supports to secure workings from falling in. (Elliott's Supp. 1885, par. 1758.) This last statute did not purport to give a right of action, in terms, for any injuries that might result from a failure to supply the miner with proper timbers to prop the roof, but it made the failure to supply the same an act of negligence *per se* on the part of the mine owner, agent or operator. While this act was in force John H. Hochstetler was injured in a coal mine in consequence of the failure of the mine owner to supply suitable timbers for props and supports, as required by the statute of 1885 above referred to. By another act of the legislature passed March 2, 1891, the mining laws of Indiana were revised and the substance of paragraph 1758 of the law of 1885 was re-enacted. The law of 1891 repealed the law of 1885 and there was no saving clause. Hochstetler brought a suit, after the new law took effect, for an injury which occurred by reason of the alleged violation of the old law. The mining company demurred to his petition on the ground that the act upon which liability was predicated had been repealed. The demurrer was sustained and the petition dismissed. This judgment was reversed by the Supreme Court of Indiana. The Su-

preme Court said: "We incline to the opinion that the failure to comply with the statutory requirements constituted negligence *per se,* and if injury resulted there was a right of action in the appellant and liability on the part of appellee at the time the injury was incurred. If such right was created and such liability existed solely by virtue of the act of 1885, then it was saved by reason of section 248, *supra.* * * * We think that if the appellee violated the statutory duty as set forth in the complaint, and an injury resulted to appellant without his fault, appellee is liable to appellant and the present action must be upheld." *Hochstetler* v. *Morier Coal and Mining Co.* 138 Ind. 271; 35 N. E. Rep. 927. See, also, *Bruce* v. *Cook,* 35 N. E. Rep. 992, and *Heath* v. *State,* (Ind.) 90 id. 310.

We have no doubt that under our general saving statute all undetermined claims arising under the old Mining law, whether suit had been commenced or not prior to July 1, 1911, are saved, and that the provisions of the old statute, so far as they concern the cause of action, are to be regarded as continuing until such cause is finally disposed of. There is, however, a difference between section 29 of the new act and section 33 of the old act. These two sections relate to the subject of penalties for the violation of the respective acts. Under section 33 it was provided that in case of loss of life by reason of a willful violation of the provisions of the act a right of action should accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons who before such loss of life were dependent for support on the person or persons so killed, for a like recovery of damages for the injury sustained by reason of such loss of life, not to exceed $10,000. The corresponding provision under the new act gives a right of action to the personal representative of the person killed for the exclusive benefit of the widow and next of kin of such person, and to any other person or persons who before such loss of life were dependent for sup-

port on the person or persons so killed, for a like recovery for the injuries sustained, not exceeding the sum of $10,000, to which is added a proviso that the amount recovered shall be distributed to the widow and next of kin in the same manner as provided by law for the distribution of personal property left by persons dying intestate. It will be noted that there are two important differences between these two sections: First, the suit, under the new law, in case of death is to be in the name of the personal representative, whereas under the old law it was in the name of the widow; second, a recovery under the old law was for the exclusive benefit of the widow, lineal heirs, adopted children and dependent persons, while under the new law it is for the benefit of the widow, next of kin and dependent persons. The substitution of the personal representative for the widow as plaintiff is a mere matter of procedure and does not affect the substantial rights of the parties. (Ency. of Pl. & Pr. sec. 15, p. 483.) In the case at bar the deceased left only a widow, who would be entitled, under either statute, to the entire amount of the recovery. (*Beard* v. *Skeldon,* 113 Ill. 584; *Willis Coal and Mining Co.* v. *Grizzell,* 198 id. 313.) Any question that may arise as to the rights of different beneficiaries under the new statute is not in this case and we express no opinion in regard thereto.

Had this suit been brought after the new act became effective, for a death occurring before, undoubtedly the personal representative should have been made plaintiff, and had it been erroneously commenced in any other name the defect could have been cured in the trial court by an amendment, upon the point being properly called to the court's attention. This suit was, however, brought by the proper plaintiff under the law as it then existed, and final judgment had been rendered in the trial court before the new law took effect. While the cause was pending in the Appellate Court or in this court, if a motion for that purpose had been made, there is no doubt of the power of either

court to have allowed the substitution of the administrator as party plaintiff, under section 7 of our statute of amendments. (See *Challenor* v. *Niles*, 78 Ill. 78.) But no motion for that purpose has been made and the cause has been submitted upon its merits. The defect, however, does not go to the merits of the case and therefore affords no reason for a reversal of the judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*