# CASES

## FOURTH DISTRICT

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1913.

## Susan Wells, Appellee, v. Lumaghi Coal Company, Appellant.

1. MINES AND MINERALS, § 136*—*when action is saved by general saving statute.* Where a cause of action accruing under the Mining Act of 1899 was commenced before the repealing Act of 1911 (J. & A., ¶¶ 7475 *et seq.*, went into effect, and the provisions upon which the action was based is not contained in the Act of 1911, the action does not abate and is saved by the general saving statute.

2. MINES AND MINERALS, § 138*—*when widow is proper plaintiff.* Where a right of action accrued to a widow under the Mining Act of 1899 immediately upon the death of her husband and suit was commenced by her under such act before the repealing Act of 1911 (J. & A., ¶¶ 7475 *et seq.*), making the personal representative the proper party plaintiff, went into effect, the action is saved by the general saving statute and is brought by the proper party plaintiff.

3. MINES AND MINERALS, § 108*—*place made dangerous by injured person must be marked.* If a dangerous condition is proved to be at any working place in a mine regardless of the object or purpose in producing such condition, then it must be marked, even though the condition may have been produced by the injured miner.

4. MINES AND MINERALS, § 108*—*when good faith is no defense.* When a mine owner or operator is advised of the conditions in the mine, he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so, he acts at his peril and cannot

---

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

excuse himself because he or his examiner or manager may think the mine safe.

5. MINES AND MINERALS, § 153*—*when evidence of conditions at time of injury is inadmissible.* In an action based upon the Mining Act of 1899 for a failure to mark a working place as dangerous, evidence is inadmissible to prove that the conditions at the time of the accident were the usual and ordinary conditions, and the very conditions that the deceased miner was attempting to produce.

6. MINES AND MINERALS, § 182*—*when question of dangerous place is for the jury.* Where a wedge shaped piece of coal left hanging from the face of a room as the result of a shot falls the next day and kills a miner who loaded and fired the shot when he was loading up the loose coal, whether the place is a dangerous place that should have been so marked is a question of fact for the jury.

7. MINES AND MINERALS, § 191*—*when instruction as to examination is misleading.* In an action under the Mining Act of 1899 defendant's instruction that there is no liability if the mine examiner examined a room before a miner went to work and the block of coal causing death appeared safe, and further that if the death was caused by decedent loosening the support of the coal, is misleading where the question is not whether the coal was liable to fall that day, but whether a dangerous condition existed, without reference to the time the danger would be precipitated or the circumstances that would transpire to cause its fall; the instruction is also objectionable because it improperly injects contributory negligence into the case.

Appeal from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed June 10, 1913. Rehearing denied October 28, 1913.

WISE, KEEFE & WHEELER, for appellant; MASTIN & SHERLOCK, of counsel.

GEERS & GEERS, for appellee.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

The plaintiff obtained judgment in the Circuit Court for three thousand dollars, to reverse which the defendant prosecutes this appeal.

On November 2, 1910, Daniel Wells, husband of the plaintiff, while engaged at work in room 5 off the first

stub of the ninth north entry of defendant's mine was killed by a fall of coal from the face of his room. On the day previous Bernard Cova and Daniel Wells, who were loaders and shooters, had been at work in this room, had placed some shots in the top and bottom of the face and fired them and as a result a lot of loose coal was thrown to the ground and a wedge shaped piece of coal, wider at the top than at the bottom, was left hanging from the face. It was resting upon some loose coal on the bottom and was hanging by the top on the roof and was standing out from the face. About one o'clock in the morning on November 2nd, Henry Sharden, the mine examiner for said mine, made an examination of this room and saw this lump of coal hanging at the face and said that he could see behind it but that he did not place any mark at it and put no danger mark in the room, and says that at the time he examined it if the bottom coal had remained it would not have fallen over from the position it was in. On the morning of November 2nd, the deceased and Cova began work in this room at about seven o'clock and were engaged in loading up the loose coal that had fallen on each side of the track, and in front of the hanging coal, up to about 9:30 o'clock when this lump of coal fell from the face and struck and killed Daniel Wells. At the time that he was killed he was about four feet from the side of the car and was shoveling coal into the car and at that time there were about three boxes of loose coal down on the side on which Wells was engaged at work that had not been loaded, and Cova says he was unable to tell whether Wells was disturbing the loose coal upon which this lump rested or not.

The plaintiff began this suit on the 7th day of March, 1911; the case was submitted to the jury on May 4, 1912, and judgment rendered on July 18, 1912.

The first count of the declaration charges that defendant had in its employ as mine manager one William Skully whose duty it was to see that all dangerous

places above and below were properly marked and that danger signals were displayed wherever necessary. That the face in room No. 5 was then and there loose, dangerous and apt to fall and by reason thereof the place became and was then and there dangerous, and the defendant then and there wilfully failed and neglected to see that said dangerous place in said room No. 5 was properly marked and that danger signals were there displayed, and that while Daniel Wells was engaged in the performance of his work and loading coal in said room a large quantity of coal and other substance fell from the place aforesaid and killed the said Daniel Wells.

The amended second count, after setting forth the dangerous conditions in said room substantially as in the former count, then alleges that the defendant wilfully failed to comply with the requirements of the Mining Act in this, that it failed to provide a mine examiner at its said mine who then and there on November 2, 1910, visited the mine before the said Daniel Wells was permitted to enter it, and inspected the same and inscribed on the walls of the working place the month and the day of the month of his visit, and the mine examiner did not place a conspicuous mark as notice to all men to keep out of said room where dangerous places then and there existed, and did not report his findings to the mine manager and did not report the dangerous condition existing in said room to said mine manager, and did not make a daily record of said dangerous condition before Daniel Wells was permitted to descend into said mine, and that while Daniel Wells was at work a great quantity of coal fell from the face of the room and killed him; that Daniel Wells left surviving him Susan Wells, the plaintiff herein, who was dependent upon him for her support. To this the defendant filed the plea of general issue.

Appellant contends that there should not have been any judgment in this case for the reason that the stat-

ute was repealed at the time judgment was entered. It will be observed that the accident occurred on November 2, 1910, the suit instituted on March 7, 1911, and appellant claims that as the revision of the Miner's Act that went into effect on July 1, 1911, (J. & A. ¶¶ 7475 *et seq.*) contained no provision placing any such duty upon either the mine manager or the mine examiner, as that alleged in either of the counts of the declaration and that as section 31 of the Act of 1911, (J. & A. ¶ 7505) expressly repealed the Act of 1899, under which this suit was brought, the court was without power to enter judgment against the defendant for the alleged negligent acts. In his argument he concedes that where provisions of the old act have been incorporated into the new act that a right of action might exist for the injuries accruing under the old act but insists that as there is no provision of the new act requiring of the mine manager and mine examiner to perform the duties charged in the declaration to have been neglected, and that as the old act was expressly repealed, plaintiff's right of action for the alleged injury abated upon the taking effect of the new act.

It is also insisted by counsel for appellant, as its second point for reversal in this case, that as the Act of 1911, (J. & A. ¶ 7503 (c)) provides that in case of the loss of life by reason of the wilful violation of the statute a right of action accrued to the personal representatives of the person so killed, for the exclusive benefit of the widow and next of kin of such person, and to any other person or persons who were before such loss of life dependent for support on the person or persons so killed, that suit cannot be maintained in the name of the widow for an injury that happened prior to July 1, 1911. Many authorities have been cited by counsel for appellant and appellee upon the effect of the enactment of the statute of 1911, as to whether actions accruing under the old act were to be continued and enforced under the old act or to be con-

trolled by the new act only, and while there appears to be a wide difference in opinion between counsel for appellant and appellee upon these questions there has been, since this case was argued and submitted to this court, a decision of the Supreme Court in the case of *Merlo v. Johnston City Coal Co.*, 258 Ill. 328, which as we think, conclusively settles these questions; the Supreme Court, after a careful examination of the principal authorities upon this question, including many of the cases cited by counsel in this case, determined that the old law remained in effect as to actions accruing under it, and on page 344 of the opinion says: ''We have no doubt that under our general saving statute all undetermined claims arising under the old Mining law, whether suit had been commenced or not prior to July 1, 1911, are saved, and that the provisions of the old statute, so far as they concern the cause of action, are to be regarded as continuing until such cause is finally disposed of. There is, however, a difference between section 29 (J. & A. ¶ 7503) of the new act and section 33 of the old act. These two sections relate to the subject of penalties for the violation of the respective acts * * * Any question that may arise as to the rights of different beneficiaries under the new statute is not in this case and we express no opinion in regard thereto.

Had this suit been brought after the new act became effective, for a death occurring before, undoubtedly the personal representative should have been made plaintiff, and had it been erroneously commenced in any other name the defect could have been cured in the trial court by an amendment, upon the point being properly called to the court's attention. This suit was, however, brought by the proper plaintiff under the law as it then existed, and final judgment had been rendered in the trial court before the new law took effect.''

It will be noted that in this case the suit was commenced before the new act took effect, and, as we think, in the name of the proper plaintiff. Under the old act

a right of action accrued to this plaintiff for her own use and benefit immediately upon the decease of her husband, and an action was commenced before the new act took effect and we think that this right of action that accrued to her under the old law is fully protected by the general saving statute which provides: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." (J. & A. ¶11105).

We are of the opinion that under this statute and the construction placed thereon by the Supreme Court, that the right of action accrued to this plaintiff and that the suit was properly brought in her own name.

It is next contended that the statute had no application to the conditions existing at the time of the accident, and, it is said, with much force, that it was the duty of Wells to shoot down the face of the coal that he might load it into the boxes and that as this was along the line of the purpose sought to be accomplished by Wells that it ought not to be regarded as a dangerous condition under this statute. This

statute, however, is mandatory and prescribes that if any dangerous conditions exist in the mine that it is the duty of the mine manager to see that they are marked as such and not to allow any one to enter the mine to work therein except under the direction of the mine manager until all conditions shall have been made safe. What constitutes a dangerous condition is to be determined by the jury upon the proof in each particular case. *Aetitus v. Spring Valley Coal Co.,* 246 Ill. 32.

It is also said that the court erred in excluding evidence to prove that the conditions at the time of the accident were the usual and ordinary conditions, and the very conditions that the deceased Wells was attempting to produce. In addition to what has been before said upon this question, as we understand the decisions of the higher courts in the construction of the mining law, that if a dangerous condition is proved to be at any working place in the mine regardless of the object or purpose in producing such condition, then it must be marked even though the condition may have been produced by the miner. If it is present at the time of the examination by the mine examiner he must mark it as dangerous. He must by this process point out and assist the miner in seeing the danger. The miner under the statute is entitled to the benefit of the superior knowledge and experience of the officers charged with the duty of discovering such conditions in the mine, and if this be true, then the object sought to be attained by such proof was immaterial and the court did not err therein.

Again, it is contended that there was no wilful violation of the statute, and in support of this counsel says: "Where it has made a bona fide examination of a room and has there found a condition that is not dangerous, has found a condition that would remain there for months, if left undisturbed by the workmen, the Company would not even be guilty of negligence in failing to give its servant a reasonably safe

place to work." As we understand the decisions of the Supreme Court, it has finally said that whether or not a dangerous condition exists is to be determined by the jury, and, "If the mine is in a dangerous condition, and the owner or operator has failed, with knowledge of its condition, to comply with the statute, he is liable, and he cannot excuse himself on the ground that he had the mine examined and in good faith thought it was not dangerous. His liability does not rest upon the ground that in good faith or bad faith he thought there was no danger in the mine, but upon the ground that he has, knowing the facts which made the mine dangerous, failed to have the statutory marks properly placed in the mine. When the mine owner or operator is advised of the conditions in the mine he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so he acts at his peril and cannot excuse himself because he or his examiner or manager may think the mine safe. To so hold would be to permit the mine holder or operator, or his examiner or manager, to usurp the functions of the court and jury, and to pass upon the question which, in every case like this, is a matter of proof and is to be determined as a fact by the jury." *Aetitus v. Spring Valley Coal Co., supra.*

The next error complained of is the refusal of the court to give defendant's fourth instruction, which is as follows: "If you find from the evidence in this case that on the morning of the accident the mine examiner examined room No. 5 before Wells went to work, and that at such time the chunk or block of coal was supported by the coal from the bottom of the shaft and was not liable to fall in that day while so supported, and if you further find that it was the duty of Wells and his buddy to load the coal so shot in room five, and that in doing their work of loading on the day of the accident, either Wells or his buddy loosened the support of the said chunk or block of coal causing it to fall, and that thereby Wells was caught

thereunder receiving the injuries causing his death then the Company would not be liable in this case and you should find the defendant not guilty.'' This instruction is misleading. The question for determination by the jury was not whether it was liable to fall that day but did a dangerous condition exist, without reference to the time the danger would be precipitated or the circumstances that would transpire to cause the fall. It also has the tendency to advise the jury that if the deceased by his own acts brought about the fall of the chunk of coal that this would relieve the defendant from liability; in other words, it is sought to inject into the case acts of contributory negligence which cannot be considered by the jury in determining liabilities under this statute.

The error assigned as to the fifth instruction has been disposed of in the former parts of this opinion and it is not necessary to discuss it further.

We are of the opinion that no substantial errors have been made in this case. That it was the duty of the jury to determine whether or not the place complained of was a dangerous condition, and the jury having so determined we can see no reason why the judgment should be reversed, and the judgment is affirmed.

*Judgment affirmed.*