Builders Supply and Lumber Company, Appellant, v. Albert Calto et al., Trading as Pronto Mason Cement Contractors, Appellees.

Gen. No. 42,118.

2

Opinion filed June. 16, 1943.

GREEN, SHAPIRO, HATOWSKI & GREEN, of Chicago, for appellant; HAROLD J. GREEN and JULES R. GREEN, both of Chicago, of counsel.

OTTO ADE ARNSTON, of Chicago, for appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This action was brought by plaintiff, Builders Supply & Lumber Co., under the Mechanics' Lien Act (secs. 1–39, ch. 82, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 74.01–74.39]) to establish its right to a lien on the property located at 6157 Leader avenue, Chicago, Illinois, owned by Albert Calto and Margaret Calto, and for a joint judgment against the Caltos as owners and John Hattam as general contractor for $571.64, which amount represents the balance alleged to be due plaintiff for lumber and other building materials sold to Hattam under an oral contract and delivered to him as ordered, for use in the construction of the residence that he had contracted to build for the Caltos (hereinafter for convenience sometimes referred to as the defendants). The cause was tried before the court without a jury and on July 9, 1941 judgment was entered in favor of plaintiff and against Hattam for the unpaid balance of $571.64. The court found the issues

against plaintiff as to its claim for judgment against the Caltos and for a lien against their property and entered judgment in favor of the Caltos on such finding. Plaintiff appeals.

Albert Calto and Margaret Calto, his wife, were the owners of the property in question. They entered into a written contract with Hattam under the terms of which he as general contractor agreed to erect a residence for them on said property for $6,000. Hattam in turn entered into an oral contract with plaintiff, Builders Supply & Lumber Co., whereby the latter agreed to sell and deliver lumber, millwork and certain other materials to be used in the construction of the defendants' building.

Plaintiff's theory as stated in its brief is that "it made fifteen deliveries of building materials to the Calto property to be used in the construction of the residence thereon, which deliveries commenced on December 27, 1939, and concluded June 17, 1940, and were made pursuant to a contract with Hattam, as general contractor for the Caltos; that not having been paid and having complied with the Mechanic's Lien Act, it is entitled to a judgment at law against the Caltos, as owners, and Hattam, as contractor, jointly, for $571.64, plus interest from July 17, 1940, together with a finding that it has a lien on the Calto real estate which attached as of December 27, 1939."

Defendant's theory is that "plaintiff failed to comply with the Mechanic's Lien Act and failed to prove a case by believable and credible evidence."

While defendants denied both in their original and amended verified statements of defense and their attorney insistently denied at the opening of the trial and during the course thereof, that plaintiff had made any deliveries of materials at all to their building site, the owners were forced to abandon their position in this regard by the overwhelming weight of plaintiff's evidence to the contrary. Defendants' attorney now

states in their brief that "the last uncontradicted delivery was made April 22, 1940." This statement to the effect that all of plaintiff's deliveries up to and including that made on April 22, 1940 were uncontradicted by defendants upon the trial is simply not true in view of defendants' verified denials in their statements of defense that any deliveries were ever made by plaintiff and also in view of their attorney's statements upon the trial that "paragraph 2 denies delivery of any materials to the building"; that "we deny you delivered any materials at all"; and that "there is a dispute on all of them [deliveries] . . . in fact, we say the material went into other buildings, was never delivered at our building . . . the stuff was put in some other building and charged to us."

Since defendants were finally compelled to admit that the first 14 deliveries of materials were made by plaintiff up to and including that of April 22, 1940, the only delivery now in question is that claimed to have been made by plaintiff on June 17, 1940. The delivery of June 17, 1940 is crucial because plaintiff's right to a mechanic's lien on defendants' property and to a personal judgment against them is dependent upon whether it made its last delivery of materials on that date.

What are the facts as to whether such delivery was made? Plaintiff's truck driver testified that he made this delivery on June 17, 1940; that the general contractor Hattam received and receipted for the materials delivered; and that he (the truck driver) turned the receipted delivery ticket into plaintiff's office. Hattam, the general contractor, testified that he ordered materials which were delivered by plaintiff's driver about 11 a. m. June 17, 1940; that he signed a receipt on the driver's delivery ticket for the materials then delivered; and that he used said materials on the same day in finishing certain phases of his work on the building covered by his contract. Sam Willens

testified that he was manager, billing clerk and price clerk for plaintiff; that he "wrote up all the invoices for delivery himself" and sent the truck driver to deliver the material; that plaintiff's ledger sheets were made up from the receipted delivery tickets turned in by its truck drivers; and that plaintiff sold $1,071.64 worth of material for use in defendants' building upon which amount $500 was paid on account, leaving a balance due of $571.64. Plaintiff's ledger sheet in connection with this account, which was received in evidence, is as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | "ALBERT CALTO 6157 Leader Avenue | | |
| Date | Fol. | Debits | Dr. Balance | Date | Fol. | Credits |
| 1939 | | | | 1940 | | |
| Dec. 27 | 3005 | $125.42 | | Feb. 24 | C357 | $500.00 |
| 1940 | | | | | | |
| Jan. 10 | 3076 | 79.66 | | | | |
| 18 | 3128 | 25.99 | | | | |
| 22 | 3136 | 131.89 | | | | |
| 31 | 3193 | 103.06 | | | | |
| Feb. 6 | 3227 | 76.91 | | | | |
| 10 | 3261 | 116.05 | | | | |
| 20 | 3306 | 50.69 | $209.67 | | | |
| Mar. 2 | 3354 | 199.59 | | | | |
| 7 | 3377 | 31.98 | | | | |
| 20 | 3450 | 41.53 | | | | |
| 22 | 3460 | 31.61 | 514.38 | | | |
| April 6 | 3565 | 38.97 | | | | |
| 22 | 3665 | 2.38 | 555.73 | | | |
| June 17 | 4367 | 15.91 | 571.64 | " | | |

The signed delivery tickets pertaining to the items on the foregoing ledger sheet were also received in evidence and it appears that, notwithstanding Albert Calto's sworn denials in his statements of defense that none of the materials was delivered by plaintiff to his premises or used in his building, he signed one of such delivery tickets himself.

As opposed to this positive and convincing testimony and the documentary evidence presented in plaintiff's

behalf, establishing beyond a doubt plaintiff's delivery of materials on all of the dates indicated on the ledger sheet, defendants offered their own testimony and that of Mrs. Calto's father, Thomas Butler. The latter had no knowledge as to whether or not plaintiff made the delivery on June 17, 1940, since his testimony discloses that he was not on or near the premises on that date. Albert Calto testified substantially that he moved into the building on April 25, 1940; that no materials were delivered thereafter by plaintiff to his premises; and that neither Hattam or any of his employees appeared at his building on June 17, 1940 to do any work. However, he further testified that he worked from 8 a. m. to 5 p. m. on June 17, 1940; and that "when I returned home from work that day I didn't see if any work was done."

Margaret Calto testified that no material was delivered to the building by plaintiff after April 25, 1940; that none was delivered June 17, 1940; and that neither Hattam nor any of his employees were at the building on June 17, 1940, nor was there any work done after May 15, 1940.

Thus the only support in the record for defendants' contention that plaintiff delivered no materials to the building on June 17, 1940 is the testimony of Margaret Calto. Her testimony in this regard is uncorroborated, since the evidence discloses that neither Albert Calto nor Thomas Butler knew whether or not such delivery had been made on June 17, 1940. As already shown, it was only when defendants were forced to do so by incontrovertible documentary proof and the positive and unimpeached testimony of disinterested witnesses, that they admitted that the first 14 deliveries were made by plaintiff, and with their backs to the wall, as it were, they then made their final stand by attempting to show that the last delivery was not made on June 17, 1940. As already stated, that was the crucial delivery in this case in so far as plaintiff's right to a mechanic's

lien against defendants' property was concerned and upon the establishment of its right to such lien depended plaintiff's right to a personal judgment against the owners of the property. The proof that the delivery of June 17, 1940 was made to their property was just as conclusive as was the proof as to the first 14 deliveries, which defendants were compelled to admit.

Under the facts and circumstances in evidence we are impelled to hold that the finding of the trial court that there was no delivery of materials by plaintiff to defendants' building on June 17, 1940 was against the manifest weight of the evidence.

Plaintiff having shown that its last delivery of materials was made to defendants' property on June 17, 1940, the next question for consideration is whether in bringing this action it complied with the provisions of the Mechanics' Lien Act pertinent to subcontractors and materialmen. It is undisputed that plaintiff served a written notice of its claim for lien on the defendants on July 26, 1940, which was well within 60 days after the date of the last delivery of materials as required by section 24 of said act. Section 33 of the Mechanics' Lien Act, which was in force at the time this action was instituted, provided as follows:

"Petition shall be filed or suit commenced to enforce the lien created by sections twenty-one (21) and twenty-two (22) of this act within four months after the time that the final payment is due the subcontractor, laborer or party furnishing material."

Plaintiff alleged in its amended statement of claim that under its contract with Hattam, the general contractor, it "was to be paid for all materials delivered to the premises" of defendants "within 30 . . . days after plaintiff had completed its last delivery of materials to the defendants, Albert Calto and Margaret Calto." There was no denial of this allegation in defendants' amended statement of defense and it must therefore be taken as true that the final payment was

due plaintiff on July 17, 1940. The last date of delivery being June 17, 1940 and the final payment being due 30 days thereafter, or on July 17, 1940, plaintiff complied fully with the then section 33 of the act, when it filed this suit on October 18, 1940, which was within the four month limitation specified in said section. However, section 33 was repealed without a saving clause and without anything being substituted therefor by an act of the legislature, which became effective July 1, 1941. The judgment herein not having been entered until July 9, 1941, there was of course no final judgment in this case prior to said repeal and therefore the repealed section 33 has no more applicability to the limitation period for the filing of this suit than if said section had never existed. "Where the legislature passes a repealing act and nothing is substituted for the act that is repealed, the effect is to obliterate such statute as completely as if it had never been passed. *Merlo v. Johnston City and Big Muddy Coal Co.*, 258 Ill. 328.''

When the legislature repealed section 33 of the Mechanics' Lien Act it amended sections 28 and 38 thereof. An interesting discussion as to the effect of the amendment of sections 28 and 38 and the repeal of section 33 of said act is found in "Historical and Practice Notes" under section 28 of the Mechanics' Lien Act in "1942 Cumulative Annual Pocket Part—Smith-Hurd Illinois Annotated Statutes." Such statement follows:

"This section and section 38 were amended and section 33 was repealed at the 1941 session of the Legislature so as to make the practice and procedure respecting the asserting, proving and enforcing of mechanic's liens on the part of materialmen, subcontractors and laborers the same as in the case of contractors.

"Section 33 required a subcontractor to file his petition or to commence his suit within four months from the date final payment became due. The amendment

to section 28 provides that a subcontractor may 'file his petition and enforce his lien' within the same limits as to time as are applicable to an original contractor. The result of these amendments is that suits in equity by subcontractors, materialmen and laborers are not barred until the expiration of two years from the completion of the contract or the completion of any extra or additional work or materials furnished. Although the amendment to section 28 refers merely to the time when the subcontractor may 'file his petition,' it was doubtless also intended that the amendment should apply to the joint action at law of a subcontractor, materialman or laborer against the owner and original contractor since the repeal of section 33 leaves no other limitation period applicable to such an action.

''The amendments to section 28 also provide that if the subcontractor, materialman or laborer is not paid, then he may either file his claim for lien or file his petition 'within the same limits as to time and in such other manner' as is provided with respect to the original contractor. This introduces several innovations. Under the Mechanic's Lien Act of 1903 a subcontractor, materialman or laborer was not required to file a lien claim except in those instances where, as is provided in section 25, the owner, agent, architect or superintendent could not, upon reasonable diligence, be found in the county in which the improvement was located or did not reside therein. Except in such instances the filing of claim for lien was ineffective. The subcontractor, materialman or laborer was required, by the provisions of section 24, to preserve his lien by serving a written notice on the owner, agent, architect or superintendent within 60 days from the completion of his contract or his extras, the delivery of his material, or the furnishing of his services. Section 24 was not repealed or amended and consequently the 60 day notice is still required. However, the amendment to section 28 provides that the subcontractor, materialman or laborer 'may either file a claim for lien or file

his petition and enforce his lien within the same limits as to time and such other manner as hereinabove provided for the contractor.' Although the amendment respecting the filing of a claim or petition is in permissive language, the provision will doubtless be held to be mandatory in that failure to take action within the time limited will bar the claim.

"It is suggested that in order to be perfectly safe every subcontractor, materialman or laborer seeking to establish and enforce a mechanic's lien should, in addition to serving his 60 day notice, also file his claim for lien or his suit to enforce the same within four months from the completion of his contract or extras if he desires to enforce his lien to the prejudice of third persons, or within two years if he is satisfied to enforce the lien only against the original owner of the premises."

We are in accord with the reasoning of the foregoing statement and the conclusions reached therein and hold that the repeal of section 33 and the amendments to sections 28 and 38 of the Mechanics' Lien Act were effective retrospectively, that plaintiff had two years within which to commence this action after the date of its last delivery to defendants' property and that this proceeding was instituted within apt time.

For the reasons stated herein the judgment of the municipal court of Chicago is reversed and the cause is remanded, with directions to enter a joint judgment for $571.64 with interest thereon from July 26, 1940, against the owners of the property involved herein, Albert Calto and Margaret Calto, and the general contractor, John Hattam, and to incorporate in the judgment order a finding that plaintiff established its right to a mechanic's lien, as of December 27, 1939, on the property of Albert Calto and Margaret Calto.

*Judgment reversed and cause remanded with directions.*

FRIEND and SCANLAN, JJ., concur.