(No. 35769.—

THE PEOPLE *ex rel.* William J. Bauer, State's Attorney, Appellant, vs. THE ELMHURST—VILLA PARK—LOMBARD WATER COMMISSION, Appellee.

*Opinion filed September 29, 1960.*

WILLIAM J. BAUER, State's Attorney, of Wheaton, for appellant.

GEORGE E. BILLETT, of Chicago, (HOWARD B. BRYANT, of Chicago,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

The State's Attorney of Du Page County filed in the circuit court of that county a complaint in *quo warranto* against defendant, The Elmhurst—Villa Park—Lombard Water

Commission, questioning both the validity of the commission's composition and its power to carry out certain provisions of an ordinance it had enacted in September, 1958. After defendant's answer and a reply thereto had been filed, the cause was heard on a stipulation of facts and judgment was entered finding the issues in favor of the commission. This direct appeal, involving both the validity of a municipal ordinance and the constitutionality of a statute, has been prosecuted by plaintiff.

The Elmhurst—Villa Park—Lombard Water Commission was organized in 1956 by the city of Elmhurst, the village of Villa Park and the village of Lombard pursuant to authority granted in article 81 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1955, chap. 24, pars. 81—1 through 81—8.) In brief, the article permitted any two or more municipalities to jointly acquire and operate a waterworks or common source of water supply, and provided that such facility be managed by a commission, which was given the power to issue and sell revenue bonds by ordinance or resolution, the power to acquire property by eminent domain, the authority to construct water mains, and the right to contract with and supply water to "any municipality, political subdivision, private person or corporation, in addition to the municipalities which have formed the commission, * * * provided the water is delivered to such party or parties at the corporate limits of the municipalities which have created such commission or from such water works properties of the commission located outside such municipalities that have been constructed or acquired as necessary and incidental to the furnishing of water to the municipalities which formed the commission." (Sec. 81—8.) As further provided by the article, each of the member municipalities appointed one commissioner to the defendant-commission, and a fourth member was appointed by the circuit judges of Du Page County sitting *en banc.* See: Sec. 81—2.

After its organization, the commission made extensive plans and surveys for the establishment of a facility to provide a common source of supply from the waters of Lake Michigan. Pursuant to this plan contracts were made with banks, engineers and attorneys, agreements were entered into for the acquisition of easements and sites, and, as permitted by the article, advance contracts were made with other municipalities and nonresident customers to supply them with water. On September 25, 1958, the commission culminated its planning by adopting an ordinance authorizing the acquisition of a common source of water supply for its member municipalities and others, consisting of a main to Lake Michigan with necessary intake, pumping stations, filtration plant, transmission lines and other appurtenances, and providing for the issuance of revenue bonds in the amount of $18,750,000 to pay the costs thereof. Before the bonds could be issued, however, threats of litigation by other States abutting on the Great Lakes made it necessary for the commission to first initiate a proceeding in the Supreme Court of the United States to establish its right to withdraw water from Lake Michigan. This proceeding, we are advised, is as yet unresolved.

The problems of the commission with which we are concerned in the present action developed on July 21, 1959, when the Governor approved House Bill 1394, a measure enacted by the Seventy-first General Assembly wherein article 81 was amended generally to permit the joint acquisition and operation of sewer systems, as well as water systems, or any combination of sewer and water systems. (Laws of 1959, p. 1656.) In addition, the Bill amended section 81—2 by altering the terms of the commissioners and by providing that each member municipality would appoint one member to the commission for each 5000 population. (See: Ill. Rev. Stat. 1959, chap. 24, par. 81—2.) Added by the bill was section 81—9, a completely new section, which limited the exercise of the powers of the com-

mission to an area within the municipalities constituting it, to contiguous territory not more than three miles beyond the corporate limits of the member municipalities, and to the territory necessary to interconnect any of the municipalities constituting the commission. See: Ill. Rev. Stat. 1959, chap. 24, par. 81—9.

In view of the foregoing amendments, and predicated on a theory that they were intended to have retroactive application, the plaintiff filed his complaint in *quo warranto* alleging that the four-member commission was improperly constituted and without authority to act, (inasmuch as the population figures of the member municipalities required a commission of seventeen members,) and that the ordinance adopted by the commission was invalid and beyond the commission's powers insofar as it provided for the construction of facilities and the rendition of services outside the territorial limits fixed by section 81—9. The commission, for its part, contended that House Bill 1394 was not intended to apply to existing water commissions, that the construction urged by plaintiff would lead to absurd consequences, and that retroactive application of the amendments would offend both State and Federal constitutions. In essence then, the issues presented and decided below were (1) whether it was the legislative intent for the 1959 amendments to article 81 to have retroactive effect, and (2) whether retroactive application could be constitutionally sustained.

The same issues have been raised and argued on this appeal. However, as the result of legislative action occurring subsequent to the time the appeal was perfected, of which we may take judicial notice, any possible constitutional or statutory doubts cast upon the 1959 amendments have been removed and the issues presented for decision have become moot.

While meeting in a second special session on May 18, 1960, the legislature passed House Bills Nos. 1 and 2 which

were subsequently approved by the Governer on May 23, 1960, and became the law in force and effect on July 1, 1960. By House Bill No. 1 the legislature added article 81A to the Revised Cities and Villages Act, which article, in substance, reenacts as a separate law all of the provisions of article 81 as it existed subsequent to the amendments of 1959. Section 81A—1 of the new article expressly provides, however, that it "shall not be construed as limiting, amending or repealing other laws with respect to joint acquisition and operation of a waterworks system or sources of supply of water or sewer systems, or any combination thereof, but shall be considered as an additional grant of power for the purposes herein set out." See: Smith-Hurd, Ill. Anno. Stat., Supp. No. 2, June, 1960, chap. 24, pars. 81A—1 through 81A—9.

House Bill No. 2, in turn, amended article 81 in such a manner as to effect its reenactment in the form it had existed prior to the 1959 amendments. Sections 81—1 through 81—8 were enacted substantially as originally passed, and as they existed when defendant-commission was formed; section 81—9 placing territorial limits on the exercise of the commission's powers was repealed; and section 81—10 was added to provide: "Whenever a water commission has been constituted pursuant to this Article, was functioning as such on the effective date of the 1959 amendment to this Article and thereafter continued to exercise the powers conferred on it at the time it was so constituted, such commission is a valid public corporation and all acts performed by or on behalf of such commission, or its officers or employees are valid." See: Smith-Hurd Ill. Anno. Stat., Supp. No. 2, June, 1960, chap. 24, pars. 81—1 through 81—10. Cf. Ill. Rev. Rev. Stat. 1957, chap. 24, pars. 81—1 through 81—8.

Without further analysis of the statutory history and the specific language employed, it is manifest from the latest amendment to article 81 that the legislature has, by cura-

tive act, validated both the organization of the defendant-commission and the powers exercised in the ordinance provisions of which the plaintiff complains. It is a firmly established principle that where there is no constitutional prohibition, and none has been brought to our attention here, the legislature may, by curative act, validate any proceeding which it might have authorized in advance. (*People* v. *Holmstrom*, 8 Ill.2d 401 ; *Owens* v. *Green*, 400 Ill. 380; *Krause* v. *Peoria Housing Authority*, 370 Ill. 356.) Equally familiar is the rule that even if a judgment has been entered and a cause is pending on appeal, the reviewing court must dispose of the case under the law in force when its decision is rendered. *Dolan* v. *Whitney*, 413 Ill. 274; *People ex rel. Eitel* v. *Lindheimer*, 371 Ill. 367; *Merlo* v. *Johnston City and Big Muddy Coal and Mining Co.* 258 Ill. 328.

Accordingly, since the legislature has validated the challenged formation and actions of the commission by legislation now in full force and effect, the questions involved in this appeal have become moot, and it is therefore dismissed.

*Appeal dismissed.*