GARRETT H. SEEGAR, Appellant, *v.* JOHN C. A. SEEGAR, Appellee.

APPEAL FROM CASS.

Where a note was given while the interest law of 1849 was in force, bearing ten per cent. interest, it is competent for the maker to plead, and show, even subsequent to the passage of the act of 1857, that the note was not given for money loaned; and thus have a rebatement of the interest exceeding six per cent.

ON the 1st September, 1852, appellant made his note for payment to appellee, at ten years' date, for $4,000, and interest at the rate of ten per cent. per annum, payable annually, on which $700 of principal and interest, up to June 1st, 1855, was credited, and appellee sued appellant in assumpsit for $702.50, for installments of interest up to September 1st, 1857. As to four-tenths of the interest sued for, appellant pleaded in bar that note was not given for money loaned. The appellee demurred to the plea, and demurrer was sustained, and judgment rendered in his favor, by HARRIOTT, Judge.

The sustaining of appellee's demurrer to appellant's plea was assigned for error.

D. A. and T. W. SMITH, for Appellant.

J. S. BAILEY, for Appellee.

CATON, C. J. This note was executed in 1852, and while the interest law of 1849 was in operation. That law allowed six per cent. interest, and no more, in all cases, except for money loaned, when it allowed ten per cent. That law also provided that, in any action brought upon any note, etc., wherein is reserved a higher rate of interest than six per cent., the defendant might plead that the note, etc., was not given for " money loaned," and if the plea was found to be true, the court should " render judgment for the principal sum in the said promissory note, or writing obligatory, and six per cent. interest thereon."

In 1857 this law was repealed, and ten per cent. allowed in all cases; and the question is, whether this took away the right to file the special plea authorized by the act of 1849, in an action brought on a note executed while that law was in force. If this right to an abatement of all interest above six per cent. reserved on the face of the note, was in the nature of a penalty, we might then hold that the repeal of the statute imposing the

9

penalty, without any saving clause, took away the penalty itself. But there was nothing like a penalty or forfeiture in that act, of anything to which the party could have a right under any circumstances. The law in effect said, now no matter what amount of interest you may express on the face of the note, above six per cent., you shall be entitled to recover six per cent., and no more—that is the extent of your legal rights and obligations under the note, though you may use language which does not accurately express the extent of this legal right. At the time the note was made, this law entered into and formed a part of it, for both parties are presumed to have had knowledge of it, and to have made the agreement with reference to it.

By reading the note in connection with the law, its legal effect is the same as if.an express clause had been inserted in the body of the note, providing, that if the maker should, in any action upon the note, choose to file a plea that the note was not given for money loaned, then six per cent. interest should be due upon it, and no more. Upon its face the interest reserved is stated at ten per cent., but whether that amount would be really due and collectable, was left by the law, and, consequently, the consent of both parties, to the discretion of the maker of the note, whether he would interpose a particular plea or not. That plea was not strictly a plea of usury, but of a distinct fact, showing what was the consideration of the note, or, rather, what was not the consideration. Although, on the face of the note, the maker nominally promised to pay ten per cent. interest, yet, in legal effect, he promised to pay but six per cent., unless he should, at the time of settlement, choose to pay the ten per cent. The payee agreed to take the six per cent., unless the maker chose to pay the amount expressed on the face of the note, as we see by reference to the law giving to the note that legal effect. By taking the note in that form, under that law, the payee agreed to leave it to the honor of the maker whether he would pay the amount specified, or only six per cent. interest. The absolute agreement was to pay but six per cent.

Here was no penalty imposed, and no forfeiture declared of any portion of the principal, or of interest to which the payee could, under any circumstances or by any agreement, have become entitled. It is merely an abatement of the excess of interest over what the party had a right to contract for. The effect of the law is a mere modification of the terms of the agreement as expressed in the note. It curtails or limits no right which the party had a right to acquire by the terms of such an agreement. The statute of 1849 secured to the maker of the note a simple individual, personal, pecuniary right to

Seegar *v.* Seegar.

interpose this plea, which became vested in the maker of the note at the time of its execution, and which was not taken from him by the subsequent repeal of that law.

The court erred in sustaining the demurrer to the plea, and its judgment must be reversed and the cause remanded.


BREESE, J., DISSENTING. It was argued by the counsel for the plaintiff in error in this cause, that the act of 1857 is void, because it deprived him of a remedy in which he had a vested right by the act of 1849.

I do not understand that a party can be said to have a vested right in a remedy. The act of 1857 is remedial as well as that of 1849, and such statutes are not void, though they be of a retrospective nature, provided they do not impair contracts, and only go to confirm existing rights, and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations.

In the case of *The People* v. *Livingston,* 6 Wend. R. 526, it is said: "As it is undoubtedly competent for the legislature to repeal absolutely, so it is competent, notwithstanding the repeal, to continue the old law in force as to proceedings commenced under it; to substitute another law in place of the old one; and to direct that all future proceedings in the progress of a cause, or the promotion of a right, shall be governed by such *new* law."

Nor, in my judgment, does this law of 1857, in its terms or principles, violate the obligation of any contract. It goes to confirm and establish the contract of the parties, and to give the very effect to the contract which they intended.

The claim set up by plaintiff in error is, that the contract is tainted with usury, and that by the act of 1849 he had a right to the abatement of all beyond legal interest, and that this act of 1857 divests him of this right.

I think that, when the rights of parties to a usurious contract are considered, and examined with reference to this act of 1857, this act cannot be viewed in any other light than as regulating the remedy with respect to such contract, and in thus altering the remedy, requiring the party to perform the contract he has made.

It would be violating the principles of sound morality for the plaintiff in error to repudiate a contract fairly made. He can have no vested right so to do.

*Judgment reversed.*