Rose Theodosis, Administratrix of Thomas Theodosis,
Deceased et al., Appellees, v. Keeshin Motor Express Company, Inc. et al., Appellants.
Appeal of Keeshin Motor Express Company, Inc. and
Jacob Diel, Appellants.

Gen. No. 44,903.

Heard in the second division of this court for the first district at the October term, 1949. Opinion filed May 11, 1950. Released for publication May 29, 1950.

WYATT JACOBS and CHARLES E. HECKLER, both of Chicago, for appellants; CHARLES E. HECKLER, of Chicago, of counsel.

KROHN & MACDONALD and PETER E. KAMUCHEY, both of Chicago, for appellees; STUART B. KROHN and IAN P. MACDONALD, both of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal by the defendants, Keeshin Motor Express Co., Inc., and Jacob Diel, from judgments on verdicts for $15,000 in favor of the administratrix-plaintiff for the wrongful death of the decedent, and for $3,000 for personal injuries sustained by the plaintiff, Elias Theodosis. The suit arose out of an accident which occurred at the intersection of Clinton and Taylor streets, in the City of Chicago, on November 1, 1946. A truck operated by the defendant, Keeshin Motor Express Co., Inc., driven by its employee, Jacob Diel, collided with a taxicab operated by defendants, Perrone and Bugajski. Decedent, Thomas Theodosis, and plaintiff, Elias Theodosis, his son, were passengers in the taxicab.

The principal question is whether the judgment for $15,000 can be sustained on the assumption that the Injuries Act of 1947, which increased the limit of recovery from $10,000 to $15,000, is applicable retroactively to this case. (Ill. Rev. Stat., ch. 70, par. 2 [Jones Ill. Stats. Ann. 38.02].) The specific question has not been passed upon by any court of review in Illinois. There have been a number of decisions by trial judges. In *Monroe v. Chase*, 76 F. Supp. 278, JUDGE WHAM held that the amendment was one of substance and was not retroactive.

Defendants rely on the opinion of JUDGE ELMER J. SCHNACKENBERG of the circuit court of Cook county in a death case, *Haut, Admx. v. McGlone*, 46 C 10366, and the opinions of JUDGE WILBERT F. CROWLEY of the superior court in four cases, *English et al. v. Glenn*, 49 S 11540, *Trust Co. v. Sales*, 46 S 14549, *Osterling v. Sales*, 46 S 14550, and *Marich v. Sales*, 47 S 1148, on

10

similar questions growing out of two amendments to the Dram Shop Act passed at the 1949 session of the legislature, one placing a limitation of $15,000 on the amount of recovery, where formerly there was no limitation, and the other reducing to two years the time within which an action may be filed. Plaintiffs rest their case on an opinion of JUDGE HARRY M. FISHER of the circuit court of Cook county in *Wojcik v. Roeters,* 47 C 10479. That opinion presents the opposing point of view. The able studies of these trial judges have been of great help to this court.

It is the position of defendants, supported by the decisions of JUDGES SCHNACKENBERG and CROWLEY, that a change in the limit of recovery is a substantive change; that the legislature is without power to make the change retroactive; that in any event, sec. 4, ch. 131 [Jones Ill. Stats. Ann. 27.16], of the Illinois Revised Statutes, providing that no Act of the legislature shall be construed to affect "any right accrued, or any claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding" is applicable to this case; that if it is pertinent to inquire into the intention of the legislature, the presumptions are all against such a construction, and that there is nothing in the language of the amendment to indicate that it should operate retrospectively.

It is the position of plaintiffs, supported by the decision of JUDGE FISHER, that an action for wrongful death was unknown to the common law; that it was created by statute and may be destroyed by statute; that all claims in the event of a repeal of the Act, whether in suit or otherwise, thereupon fall; that, therefore, rights derived from the statute are not vested and are not protected against retroactive legislation; that correlatively, a defendant does not have a vested right to exemption against increased liability; that the only question is the effect of sec. 4, ch. 131; that the change in

11

the amount of recovery was procedural and did not affect any right accrued or claim arising before the new law took effect; and that it was the intention of the legislature to make the law retroactive, which intention is derived from the fact that saving clauses against retroactivity were explicitly incorporated in previous legislation.

These arguments present many problems concerning the scope of the principle, its application to the right of defendants to exemption from greater liability, and whether this limitation on liability is substantive, or a "remedy" or "proceeding."

The doctrine that legislation must be prospective in its application is deeply imbedded in English and American law. It is traced by historians to Coke, who derived it from Bracton, who in turn derived it from Roman and Greek law. It was incorporated in restricted form in the American Constitution, was announced first by Kent and Story, and became a principle of the American courts. In Illinois, it was reflected in 1858 in an opinion by JUSTICE CATON in the case of *Seegar v. Seegar,* 19 Ill. 121, and later, in opinions by JUSTICES CARTWRIGHT, CARTER, FARMER, and others, in cases which we will discuss.

A few states have express prohibitions of retroactive laws in their constitutions (Colorado, Georgia, Idaho, Missouri, Montana, New Hampshire, Ohio, Tennessee, and Texas). Illinois does not have a constitutional prohibition, but has embodied the principle in sec. 4, ch. 131, *supra.*

The first exposition of the principle in the United States was by CHANCELLOR KENT in the case of *Dash v. Van Kleeck,* 7 Johns (N. Y.) 477, 5 Am. Dec. 291. He summarized the doctrine and its antiquity in this pithy language (p. 308): "It is a principle in the English common law, as ancient as the law itself, that a statute, even of its omnipotent parliament, is not to have a retrospective effect: *Nova Constitutio futuris,*

12

Bracton and Coke; and in *Gilmore v. Shuter,* 2 Mod. 228, 310, 2 Inst. 292. . . . There has not been, perhaps, a distinguished jurist or elementary writer within the last two centuries, who has had occasion to take notice of retrospective laws, either civil or criminal, but has mentioned them with caution, distrust or disapprobation." (p. 311.) He held that a defense allowed a sheriff charged with the escape of a prisoner held under a *ca. sa.* did not apply to a prior action. JUSTICE KENT stated as a principle that the objection based on retroactivity "relates not merely to future suits, but to future, as contradistinguished from past contracts and vested rights." The vested right which CHANCELLOR KENT there protected was the right of plaintiff to bring a suit free of the defense which defendant had under the new statute. JUSTICE YATES, in a contrary opinion in the same case, considered the statute as correcting an existing injustice and that therefore it ought to be applied to existing litigation. He did not consider that a "vested right" entitled to protection against legislation, was involved. This presents the underlying ambivalence which has always troubled the courts in their consideration of this question. Reacting powerfully against the absolutism which could make an act, innocent at the time of its commission, a crime or source of liability, courts at first saw nothing but evil in the retroactive application of law. But on the other hand, if a good law corrected an evil, courts were later tempted to apply it as extensively as possible.

JUSTICE STORY in 1814 approved Kent's decision, saying: "Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or *creates a new obligation, imposes a new duty, or attaches a new disability* in respect to transactions or considerations already past, must be deemed retrospective. . . ." *Society for the Propagation of the*

*Gospel, etc. v. Wheeler,* 2 Gal., C. C. 105, 139. (Italics ours.)

The Supreme Court of Illinois in the early case of *Seegar v. Seegar, supra,* had under consideration a defense to a note on the ground that it was usurious under the statute in effect at the time the note was given. A subsequent Act had rendered the transaction nonusurious. The court sustained defendant's position that he had a vested right in the defense of usury. In *Parmelee v. Lawrence,* 44 Ill. 405, 414, the court had under consideration a provision of the usury law that "no portion of the interest which the debtor may have voluntarily paid shall be deducted from the principal." It held that this provision of the Act could have only prospective operation. However, it did hold that a provision of the law under which the legislature abolished a penalty would be given a retroactive effect, since there is no vested right in a penalty. In *Bauer Grocer Co. v. Zelle,* 172 Ill. 407, the court held that a statute reducing the legal interest rate from 8 per cent to 6 per cent would not be given retrospective operation, saying: "The rule is that statutes are prospective, and will not be construed to have retroactive operation unless the language employed in the enactment is so clear it will admit of no other construction." (p. 414.) Other cases supporting this position are: *Steger v. Traveling Men's Building & Loan Ass'n,* 208 Ill. 236; *Dobbins v. First Nat. Bank of Peoria,* 112 Ill. 553; *Beutel v. Foreman,* 288 Ill. 106; *Eddy v. Morgan,* 216 Ill. 437; and *Miner v. Stafford,* 326 Ill. 204.

In *Beutel v. Foreman,* 288 Ill. 106, the court said that a vested right may include "a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a *legal exemption from a demand made by another.*" (Italics ours.)

In *Wall v. Chesapeake & O. R. Co.,* 290 Ill. 227, the court retroactively applied an Act of 1903, prohibiting

14

the bringing of an action in this State to recover for a death occurring outside the State. The court held there was no vested right in any public law which is not in the nature of a private grant.

It appears that the language used in the decisions defining vested rights is sometimes rigidly restricted to rights acquired under contract or by private grant, but at other times is enlarged to include rights which are "acquired" or vested under previous statutes, including a *"legal exemption from a demand made by another."*

JUDGE SCHNACKENBERG and JUDGE CROWLEY hold in effect that the right to "legal exemption from a demand" is a substantive right which cannot be retroactively affected by legislation. It is not necessary, in the light of sec. 4, ch. 131, to go this far, but there is much support in the decisions for this position, and this is so, even though plaintiffs may not have correlative rights. The reasoning is this: A retroactive increase in the amount recoverable against a defendant is the equivalent of imposing a new liability upon defendant. It is as if the original LORD CAMPBELL's Act had been retroactively applied to deaths prior thereto. As we have said, there are no cases in Illinois directly in point. Other courts have, however, sustained the principle. *Keeley v. Great Northern Ry. Co.,* 139 Wis. 448, 121 N. W. 167; *Quinn v. Chicago, M. & St. P. Ry. Co.,* 141 Wis. 497, 124 N. W. 653; *O'Reilly v. Utah, N. & C. Stage Co.,* 34 N. Y. Supp. 358, approved in *Isola v. Weber,* 147 N. Y. 329, 41 N. E. 704.

In *Keeley v. Great Northern Ry. Co., supra,* the legislature had increased the amount of damages from $5,000 to $10,000 and the question was whether that change was retroactive. The court said: "When this accident happened, the plaintiff had a claim for the recovery of not exceeding $5,000. . . . When the legislature afterward said that in such cases there

might be a recovery up to the sum of $10,000, they in effect created a new cause of action for the second $5,000. It was not a mere change in remedy, but to all practical purposes it created a new right of action. If it created a new right, and did not merely change the remedy, it is not applicable to prior transactions.''

This decision was approved in *Quinn v. Chicago, M. & St. P. Ry. Co., supra.*

In *O'Reilly v. Utah N. & C. Stage Co., supra,* the constitution of the State had been changed so as to provide that in death cases the amount recoverable should not be subject to any statutory limitations. The court there said: "Upon the death of the intestate his administratrix had a fixed right to recover the damages sustained by his wife or next of kin by reason of his death, and the statute giving that right limited the defendant's liability to $5,000. Both litigants had rights and liabilities created and limited by these statutory provisions. By these statutes a new remedy was not simply provided, but a new right and liability were created, and the statutory provision became part of the substantive law of the state.''

In the case of *Merlo v. Johnston City & Big Muddy Coal & Mining Co.,* 258 Ill. 328, it was held that a general rewriting of the Mining Act did not abrogate a cause of action for wrongful death which had previously accrued. The court further held that a change in the action, substituting the personal representative of the deceased for the widow as the proper party plaintiff, was procedural. The court expressed no opinion on any question that might arise as to the rights of different beneficiaries under the new law. However, in referring to sec. 4, ch. 131, the court said, p. 335, "We have a general saving statute which furnishes the true guide for determining the effect of a repealing statute upon existing rights.''

There is another class of cases which while not directly in point has a strong bearing on the question.

16

These are cases tried in courts removed from the lex loci. The question was whether the court should apply the limit of recovery allowed by the law of the State in which the cause of action arose or the limitation of the lex fori. The weight of the authority is to the effect that limitation on the amount of recovery is a matter of substance and not of remedy or procedure and therefore the lex loci applies. The following are the authorities in point: *Northern Pac. R. Co. v. Babcock*, 154 U. S. 190; *Jackson v. Anthony*, 282 Mass. 540, 185 N. E. 389; *Reilly v. Antonio Pepe Co.*, 108 Conn. 436, 143 Atl. 568 and *Hanna v. Grand Trunk R. Co.*, 41 Ill. App. 116. In the case last cited, it was held that the Illinois limitation on recovery did not apply in a suit brought under the wrongful death act of Canada. One of the cases which is contrary to the foregoing decisions is that of *Wooden v. Western New York & P. R. Co.*, 126 N. Y. 10, reported at 56 L. R. A. 206. The annotator in L. R. A. made this comment: "It will be observed that the court took the position, *which is contrary to the weight of authority*, that the limitation of the amount of recovery was a matter that pertained to the remedy merely, and was therefore to be governed by the law of the forum." (Italics ours.)

There is another group of cases in Illinois, cited as authorities pro and con. These are the workmen's compensation cases. They fall into a special category known as "statutory proceedings"; that is, cases in which the action is created, the remedy prescribed, and all elements of procedure and substance provided for by the Act. In such cases, our courts have held that the law may be applied retroactively. *An action for wrongful death, however, "is not a statutory proceeding, but a proceeding in substantial conformity with the forms and modes prescribed by common law." Reid v. Chicago Rys. Co.*, 231 Ill. App. 58. Even in workmen's compensation cases, there are rights which cannot be affected retroactively. *Stan-*

17

*swsky v. Industrial Commission,* 344 Ill. 436; *Playhouse Theatre v. Industrial Commission,* 346 Ill. 509. In *Stanswsky v. Industrial Commission, supra,* the retroactive effect of an amendment which provided that in certain cases the balance of compensation due an employee should be payable to his dependents, was involved. The court said: "At the time of the accidental injury in this case the law defined the rights of the employee and circumscribed the limits of the employer's responsibility. It is clear that such rights to compensation as existed on the date of the injury in January 1929 could not be enlarged or diminished by an act of the legislature which became effective in July, 1929." This decision was approved in *Playhouse Theatre v. Industrial Commission, supra.* (Italics ours.)

There is a group of workmen's compensation cases in which the question was obviously very troublesome to the court. In *Smolen v. Industrial Commission,* 324 Ill. 32, 36, Smolen received an award for *total* disability. A subsequent amendment to the Act provided for a review of the award by the commission if the employee returned to work or was able to do so. Some years later, Smolen returned to work, and on application, the commission reduced the prior award. The court held that this was a statute amending the procedural right of review, giving the Industrial Commission additional power to review its award. This case is understandable in the light of the theory of industrial compensation. A vigorous dissent, however, by JUSTICE FARMER called attention to the previous conflict in the decisions of the Supreme Court in the cases of *Arnold & Murdock Co. v. Industrial Commission,* 314 Ill. 251, and *Superior Coal Co. v. Industrial Commission,* 321 Ill. 240. He urged that the original judgment order of the commission was invulnerable against retrospective legislation.

There is another group of cases which has received special treatment. These are cases in which the statute

18

of limitations is involved. In *Carlin v. Peerless Gas Light Co.*, 283 Ill. 142 (1918) the court had under consideration the amendment to the Injuries Act of 1903. This limited the commencement of action to one year, where formerly it had been two years. The statute was silent on retroactivity. JUSTICE FARMER, speaking for the court, held that it should be applied retroactively to a right of action which accrued three months before the amendment took effect. The justice's reasoning is based upon the usual argument with respect to an action under the Injuries Act; that is, that it was unknown to the common law; that it was created by statute and therefore could be changed by statute. No mention is made of sec. 4, ch. 131. The decision emphasized the fact that plaintiff had nine months after the new law went into effect to bring his action. There is support for the point of view that a statute of limitations may be applied retroactively, provided there is reasonable time between the adoption of the new statute and the expiration of the period of limitation fixed therein for the plaintiff to bring his action. (Smead, 20 Minn. Law Rev. 796, citing *Ochoa v. Hernandez y Morales*, 230 U. S. 139, and other cases.) It should be noted that CHIEF JUSTICE CARTER dissented vigorously from the opinion of JUSTICE FARMER in *Carlin v. Peerless Gas Light Co., supra*.

On the same question there are many cases involving the probate of wills. In *Spaulding v. White*, 173 Ill. 127, the court held that a statute fixing a time limit for filing a bill to contest a will, was applicable retroactively. The court said that this was a statute defining jurisdiction, but if it were treated as a statute of limitations, it was still applicable to the case because plaintiff had the reasonable time of nine months to bring his action. This case was considered in *Carlin v. Peerless Gas Light Co., supra,* and seems to have influenced that decision. JUDGE CROWLEY, after an intensive analysis of probate and compensation cases, concluded as fol-

19

lows: "Therefore, it appears that any change in the conferred jurisdiction under the Probate Act and any change in the created proceedings under the Workmen's Compensation Act are changes that operate immediately. If rights are lessened, or even lost, as a result, it is not because the law giving the rights has been retroactively repealed, but simply because the rights are enforcible in a lesser jurisdiction, in the one instance, and through a different proceeding in the other."

The position of the plaintiff-administratrix rests on the proposition that the common law did not recognize an action for wrongful death, and that it is entirely a legislative creation. Unquestionably, many cases can be found in which the courts have stated this, but it was stated without application. We will not attempt to shake this buttress of repetition, except to say that those who have studied the subject find that the idea rests on an unsound basis.

An early American case, *Shields v. Yonge,* 15 Ga. 349 (1854) refused to accept this version of the common law. In a very illuminating opinion, JUSTICE BASON reviewed the history of this doctrine. He pointed out that the rule rested on a statement by LORD ELLENBOROUGH in a nisi prius decision and was not the considered judgment of the court. Pollock, in "The Genius of the Common Law" (1912), at page 118, says: "Most unluckily some one got hold of a supposed Roman maxim, for which there is really no authority, that 'personal actions die with the person.' By further ill luck an opinion for which classical Roman warrant does exist came to reinforce this pretended authority, the opinion that a free man's life is incapable of pecuniary valuation. It is a fine ethical observation, but, I venture to think, inappropriate in the field of legal justice. In the result, the Common Law was saddled with the rule that the death of a human being cannot give rise to a civil cause of action, one of the most

foolish rules, if I dare say so, that have ever been adopted by the courts of a civilized country; . . ." Those who desire to observe how an erroneous dogma can push an almost unimpeded path through centuries of law would do well to read the Georgia decision and what Holdsworth, in "A History of English Law," vol. 3, p. 335, says about it. Every State in the union has adopted an Act of compensation for wrongful death, and no one can doubt that it is much more firmly rooted in our concept of justice than many actions known to the common law. If we assume that the legislature could appeal the Act and thus deprive a plaintiff of his accrued right of action for wrongful death, does it follow that it could likewise increase the liability of a defendant retroactively? It is one thing to take away a right previously conferred, but quite another to impose a liability. If the view of the Wisconsin court in *Keeley v. Great Northern Ry. Co.*, 139 Wis. 448, 121 N. W. 167, and in *Quinn v. Chicago, M. & St. P. Ry. Co.*, 141 Wis. 497, 124 N. W. 653, is correct, then the pertinent inquiry is not whether the legislature can take away a plaintiff's rights in such cases, but whether they can create a liability against a defendant for a prior wrongful death. In other words, could the first LORD CAMPBELL's Act have been applied retroactively, and if so, how far back?

██ In arriving at the intention of the legislature, it is argued by plaintiffs that when in 1903, the amount of recovery was raised from $5,000 to $10,000, a saving clause was included, limiting the amendment to a prospective effect, and the fact that this was not done in 1947 evidences the legislature's intention to permit the increase in the amount of recovery to be applied retrospectively. Such a construction cannot be given, in the face of the emphatic language of sec. 4, ch. 131, the construction given in the cases we have heretofore cited, and many others. The legislature must be deemed to have been aware of the law, as stated in

21

sec. 4, and decisions such as the following: *Eddy v. Morgan,* 216 Ill. 437; *Cleary v. Hoobler,* 207 Ill. 97; *People v. Board of Education,* 349 Ill. 390, 401; *People v. Massieon,* 279 Ill. 312; *Stanswsky v. Industrial Commission,* 344 Ill. 436, and *Merlo v. Johnston City & Big Muddy Coal & Mining Co.,* 258 Ill. 328.

In the construction of sec. 4, ch. 131, a careful examination should be made of the precise wording. The words used are ''right accrued,'' ''claim arising,'' and ''proceedings.'' The words employed in legal technique, to-wit: ''cause of action,'' ''vested rights,'' ''substantive rights,'' ''procedural'' and ''remedial'' are not used. These words involve concepts which may be broad enough to cover the entire system of justice as we know it, or may relate to the means by which the ultimate decision is attained. In *People v. Clark,* 283 Ill. 221, it was held that procedure includes ''in its meaning whatever is embraced by the three technical terms, pleading, evidence and practice.'' ''By remedy is meant the judicial means for enforcing a right or redressing a wrong.''

In *Eddy v. Morgan,* 216 Ill. 437, the court had occasion to consider the retroactive effect of a legislative provision for a pension. Appellee had contended that the Act was remedial and therefore should be given retrospective effect. The court said, ''There are various kinds of remedial statutes, and those statutes with relation to matters of procedure and which affect the remedy alone are frequently, if not usually, so construed as to affect rights of action existing at the time of their passage, or rights of action accruing upon contracts or growing out of transactions had before the passage of the act. Such was the case in *Woods v. Soucy,* 166 Ill. 407, cited by appellees [in which the procedure preliminary to forcible entry and detainer was changed and applied retroactively]. The act in question is remedial, as being contra-distinguished from penal acts, *but is not of a class of acts that are*

22

*ordinarily given retrospective effect. . . ."* (Italics ours.)

Examples of cases which have been classified as procedural or remedial are—abolishing equity jurisdiction of county court (*Holcomb v. Boynton,* 151 Ill. 294); review of administrative order (*Otis Elevator Co. v. Industrial Commission,* 302 Ill. 90; *Illinois Cent. R. Co. v. City of Wenona,* 163 Ill. 288); action of commission made discretionary instead of mandatory (*People v. Clark,* 283 Ill. 221; *Vance v. Rankin,* 194 Ill. 625); survival of action to contest election (*McKinley v. McIntyre,* 360 Ill. 382); showing of devastavit abolished as condition precedent to action on guardian bond (*Winslow v. People,* 117 Ill. 152); and notice requirement in ejectment proceeding (*Woods v. Soucy,* 166 Ill. 407).

Whatever rights defendants have with respect to protection against retroactivity must be stated in terms of an exemption against liability in excess of $10,000. Described in those terms, it is certainly neither remedial nor procedural within the most extended concept of the terms. True, it is the objective of the law to compensate plaintiffs ultimately for whatever damages they may have wrongfully sustained, within certain limits, and plaintiffs will thereby have received their "remedy." But that is far beyond the bounds of what may, in the most generous spirit, be considered "proceeding."

Section 4 goes further than this. It provides explicitly that the claim shall not be "affected." This is designed to protect both plaintiffs and defendants. Can it be said that a law increasing a claim from $10,000 to $15,000 has no effect on the claim?

Writers who have analyzed the principle under consideration, both in the light of its historical aspects and contemporary decisions, agree that neither the principle nor its offspring, "vested rights," can be defined in terms which require only the application of

23

logic to reach the right conclusion in a particular case. When courts are examining legislation relating to matters of general public interest, such as election laws, roads, and tax validations, they apply the law retroactively, even though it may affect a substantive right. On the other hand, in their relationship with each other as individuals, men should be able to assess with some assurance the results of their conduct. It is not for us to say what in this case the parties might have done about it. JUDGE FISHER in his decision opines they would not have acted differently. JUDGE SCHNACKEN-BERG thinks they might have protected themselves by adequate insurance, a method approved by public policy. (Par. 155, sec. 58, subpar. (1), ch. 95½, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 85.187, subpar. (1)].) Another might suggest that peaceable settlements would have been more readily arranged. These are considerations which we need not weigh. The fact still remains that a legal liability, even now difficult enough to appraise, should not be made more so by a blunt application of retroactive effect. The original repugnance of courts to retroactive application of a law rested on the sound principle that an act, innocent at the time of its commission, should not become a crime or the source of a civil liability. The principle had the character of a civil right. However much it may have been qualified in the public interest, it is still sound.

■ Error is urged in the giving of certain instructions having to do with the question of right of way. Four instructions were given—two at the request of appellants defendants, one at the request of plaintiffs, and one at the request of defendants Perrone and Bugajski, which quoted the statute on right of way. Defendants criticize the instruction quoting the statute on right of way because it failed to tell the jury it must take into consideration the distance the vehicles were from the point of collision and the speed of their approach. However, the jury was so told in the instruc-

tions presented by defendants. It is our opinion that taken as a whole, the instructions on the matter of right of way are weighted on the side of defendants rather than plaintiffs.

In *Goldberg v. Capital Freight Lines,* 382 Ill. 283, 294, the court approved an instruction in the language of the statute where a pedestrian was involved. The situation where two vehicles are involved is different, but in the same case above quoted, the court referring to several instructions complained of, said, "When taken together with other instructions and read as one connected series, the instruction was not improper. *Chicago City Railway Co. v. Bundy,* 210 Ill. 39; *Central Railway Co. v. Bannister,* 195 id. 48."

Complaint is made of the hypothetical question asked of an expert medical witness with respect to injuries to the plaintiff, Elias Theodosis. Counsel argues that he demonstrated by cross-examination that the doctor's testimony was obviously speculative and should have been stricken. This was opinion evidence, and if counsel succeeded by his cross-examination in discrediting the value of that opinion, it was a matter for the jury.

The verdict for Elias Theodosis was for $3,000. The injuries left him with a scar on his forehead from the hairline down to the eyebrow, and with a back and head condition which according to his testimony still persisted at the time of the trial, three years after the accident. The amount, $3,000, was not excessive.

Our conclusion is that the right of defendants to exemption from liability in excess of $10,000 is one of those rights which, having accrued prior to the passage of the Act, cannot be affected by it. We conclude further that under the law of this State, as expressed in the decisions of its Supreme Court and in the statutory enactment of sec. 4, ch. 131, the Injuries Act of 1947 cannot be construed to have retroactive effect.

25

■ The proper and conventional order in a case of this kind, in view of the fact that there are defendants who have not appealed, is to reverse and remand, although a decision of the question by the Supreme Court as soon as possible is highly desirable, since many cases involving a similar question are now pending. If upon the entry of judgment in the trial court, the matter is again presented to us, we will promptly dispose of it and grant a certificate of importance. Accordingly, the judgment of the circuit court of Cook county in favor of plaintiff-administratrix and against defendants is reversed and the cause remanded to the circuit court with directions to enter judgment in favor of plaintiff-administratrix and against defendants for $10,000; the judgment in favor of plaintiff, Elias Theodosis, against defendants is affirmed. It is ordered that the costs of this appeal be taxed one-half against plaintiffs and one-half against defendants appellants.

*Judgment affirmed in part; reversed and remanded in part with directions.*

FRIEND, P. J., and SCANLAN, J., concur.