Frank Lichter, Lydia Flores, a Minor, by Manuel Flores, Guardian of Her Estate, Appellees, v. Phil Scher, and Morris Petchersky, d.b.a. P. M. Liquor Store, Jack Spot Inn, Inc., and Leonard A. Bauer, d.b.a. Better Value Liquor Store, Defendants. Jack Spot Inn, Inc., Appellant.

Gen. No. 46,822.

First District, Second Division.

September 25, 1956.

Released for publication November 27, 1956.

John J. Maciejewski, of Chicago, for appellant; Charles D. Snewind, of Chicago, of counsel.

David Alswang, and Alexander J. Reiff, both of Chicago, for appellee; David Alswang, of Chicago, of counsel.

JUDGE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order denying the petition of Jack Spot Inn, Inc., a corporation, hereinafter called the defendant, to set aside an order of default and to vacate a judgment for $25,000. While Frank Lichter still appears as a plaintiff in the title of the case, an order was entered September 14, 1951, dismissing the cause as to him and leaving Lydia Flores the sole plaintiff. The complaint filed July 19, 1948 charged that defendant in violation of the Dram Shop Act caused the intoxication in whole or in part of Nancy Lichter, mother of Lydia Flores, as a result of which Nancy Lichter died. Summons issued and was

returned August 24, 1948, with an endorsement by the Deputy Sheriff that he had served the writ on "Jack Spot Inn, Inc., a corporation, by leaving a copy thereof with H. S. Wakefield, an agent of said corporation this 20th day of July, 1948." No appearance or answer was filed by Jack Spot Inn, Inc. and on December 6, 1951 notice was given to the attorneys of record for the other defendants that it was contemplated that a default judgment, order or decree would be entered December 13, 1951, at 2 o'clock P.M. A sworn certificate of the Clerk of the superior court was attached, certifying that the notice was mailed December 6, 1951. On December 13, 1951 an order of default was entered and a jury was waived for the purpose of prove-up on the default. Thereupon, the court heard the evidence, assessed damages at $25,000 and entered judgment.

On September 16, 1953, defendant, which had changed its name to Johnny Mitchell's Incorporated, filed its petition to vacate and set aside the default and judgment. In support of its petition defendant presented the affidavit of Wakefield, denying that he was ever served with summons. Plaintiff moved to strike the petition and the court allowed the motion. An appeal was thereupon taken, and in Lichter v. Scher, 4 Ill.App.2d 37, 123 N.E.2d 161, this court reversed the order and remanded the cause for hearing on the issue of service. Upon remandment the trial court heard the evidence on the issue of service, as well as argument on the other points made by Jack Spot Inn, Inc. The court decided against defendant and entered the order and judgment in question. Some of the points made by defendant are highly technical but we have given them all careful consideration. In a case in which default has been entered and there has been no trial on the merits, the judgment itself is based on the technique of procedure and is subject to careful scrutiny. We will consider first the factual issue of service on defendant:

■ ■ The deputy sheriff testified that he entered the tavern in the afternoon of the day of service, that no one was there except a man behind the bar who gave his name as H. S. Wakefield, that he gave Wakefield the writ and made return thereof. Wakefield testified that he never received the summons, that he always held himself out as "Jim" and never used the name "Horace" nor the initials "H. S." in the tavern. While in his affidavit and in portions of his testimony he denied that he received the summons, on cross-examination he was not so sure. It is argued that Wakefield was not the proper agent to receive service. So far as appears from the record this corporation operated but one tavern. As we have said, it had changed its name from Jack Spot Inn, Inc. to Johnny Mitchell's, Inc. Its president was known as Harvey Murray, as Johnny Mitchell, and sometimes as Johnny Michael. He never appeared in the case. The agent named for service of process was Sidney Bernberg, secretary-treasurer, who was not a full-time employee. He was an auditor who appears to have done work for the corporation only occasionally. His residence address was listed in the telephone book, but his office address was not listed. Wakefield, according to the testimony of the deputy sheriff, which the trial court accepted as worthy of belief, was the only employee in the place at the time he entered. Wakefield mixed and sold drinks—the main, if not the only, business of the corporation—and at the time in question he was in charge. Indeed, he seems to have had a more substantial contact with the business than the officers of the company. The evidence supports the finding of the chancellor.

■ After judgment had been rendered an order was entered by the court January 28, 1952, granting leave to amend the complaint and other pleadings, orders and judgments by inserting the words "also known as Johnny Mitchell's Incorporated, a corporation," after the words "Jack Spot Inn, Inc., a corpora-

tion," and amendments were made accordingly. This order was entered upon certification by the attorney for plaintiff that notice had been given to the attorneys of record for the other defendants and that a notice had been mailed to Sidney Bernberg, secretary-treasurer of the defendant. It is the contention of Jack Spot Inn, Inc. that this amendment vacated the judgment which had been entered; that thirty days having expired, there could be no change in the judgment except as to form and then only pursuant to some note, memorandum or memorial remaining in the files or records of the court. The amendment neither added to nor detracted from the validity of the judgment. It was merely a further description of the defendant. If we assume that the court had no power to make the amendment, the judgment against Jack Spot Inn, Inc. still is not invalid because of the attempt. We will comment on some of the cases cited by defendant.

In Cowen v. Harding Hotel Co., 329 Ill. App. 239, 67 N.E.2d 707, the court held that summons shown as returned the day *before* suit was brought constituted an invalid service. In Oppenheim & Strauss v. Mower, 193 Ill. App. 48, a judgment was changed from one against a corporation to a judgment against a copartnership. The court considered this a change in substance. In Odell v. Levy, 307 Ill. 277, 138 N. E. 608, a supplemental bill seeking to make additional parties to a decree of foreclosure was held to have had the effect of rendering the previous order taking the decree pro confesso inoperative. It appears that the supplemental bill deprived the additional parties of their substantive rights. The distinction between the foregoing cases and the instant case is apparent.

██ Clark v. Augustine, 342 Ill. App. 296, 96 N.E.2d 582, is cited by defendant for the proposition that a judgment cannot be amended after thirty days even as to form unless such amendment was pursuant to some note or memorandum in the files or records of the

court. Defendant contends that there was no such note or memorandum in the instant case. The order of default recites that Jack Spot Inn, Inc. *was also known as Johnny Mitchell's, Inc.,* a corporation. This was a sufficient note or memorandum to satisfy the requirements of the Clark case.

■ Defendant contends that plaintiff's waiver of a jury and the court's hearing and assessment of damages pursuant thereto operated to vacate the default and hence the judgment was invalid. Article VII, Sec. 71, of the Civil Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 195] provides as follows:

"(Assessment of damages by court). In all actions in the courts of record in this State upon default, when the damages are to be assessed, it shall be lawful for the court to hear the evidence and assess the damages without a jury for that purpose."

In this case, the defendant was in default for want of appearance after service, and it was proper for the court to hear the evidence and to assess the damages. In Cowen v. Harding Hotel Co., 329 Ill. App. 239, 67 N.E.2d 707, cited by defendant, there is language to the contrary. There, the plaintiff sued the Harding Hotel Company, a corporation, and the Harding Hotel Management Corporation, a corporation. The sheriff made a return showing that he served the hotel company by leaving a copy of the summons with A. J. Sinkula, its office manager and agent, and that he also served the management company by leaving a copy of the summons with A. J. Sinkula. The hotel company entered its appearance and filed an answer. The management company, however, defaulted. Without notice to the *hotel company,* default was taken against the management company. A jury was waived by the plaintiff, damages were assessed by the court, and a judgment entered against the management company. The court held that the plaintiff could not withdraw its demand for a jury as to the management company

without notice to the hotel company. In this respect it differs from the instant case, in which other defendants whose appearance had been entered were notified. In Palmer v. Harris, 98 Ill. 507, a defaulted defendant sought to have a judgment set aside on the ground that he had the right to have the damages assessed by a jury. Pursuant to the statute then in effect, the damages had been computed by the clerk and judgment entered thereon. The statute contained a proviso that either party could have the damages assessed by a jury. The court held, however, that where the defendant was in default for want of appearance, he could not after judgment have it set aside in order that a jury might assess the damages. The court said, p. 510:

"In our opinion, the court is under no obligation to keep a case open for a non-appearing defendant any length of time. If he is in court, it is his duty to be present when the case is reached in its order upon the docket and called for trial, and then make known any wish he may have in regard to the mode of assessing damages, precisely as it is his duty to be present at or before that time and interpose any defence he may have to the action."

In McNulty v. White, 248 Ill. App. 572, after the term in which a default judgment was rendered had gone by, the defendant moved to set aside the judgment on the ground that other parties defendant had been dismissed without notice to the attorneys for the movant. A rule of the circuit court required notice of assessment of damages. The court held that a defaulted defendant was not entitled to such notice.

██ Defendant in the instant case contends that the judgment is void because at the time of the entry thereof the Dram Shop Act limited recovery to $15,000. This limitation was imposed by the amendment of August 10, 1949. At the time the cause of action arose,

448

March 10, 1948, and at the time of the commencement of suit, July 19, 1948, there was no limitation on the amount of such damages. It is defendant's contention that the limitation is retroactive. It bases this theory on the proposition that the Dram Shop Act is purely a statutory creation and its continued existence or modification dependent on legislative enactment. Therefore, the legislature had the right to make such modification or abolition retroactive. The language of the Act and the purpose thereof, it is contended, reveal that the legislature intended to make the limitation retroactive.

Since the recent adoption of amendments relating to damages in both death and dramshop actions and limiting the time within which such actions may be brought, the law bearing on the retroactive effect of these statutes has been considered in a group of cases in the Supreme and Appellate Courts. Orlicki v. McCarthy, 4 Ill.2d 342, 122 N.E.2d 513, affirming Orlicki v. McCarthy, 2 Ill.App.2d 182, 119 N.E.2d 1; Fourt v. DeLazzer, 348 Ill. App. 191, 108 N.E.2d 599; Steiskal v. Straus, 3 Ill.App.2d 479; Theodosis v. Keeshin Motor Exp. Co., Inc., 341 Ill. App. 8, 92 N.E.2d 794. In Orlicki v. McCarthy, supra, the question arose whether the amendment of 1949, which limited to two years the time within which a dramshop action could be brought, was retroactive and could be applied to a cause of action which arose prior to the time of the amendment. The Supreme Court recognized the general principle that legislation should be prospective in character, that this principle has long been incorporated into American jurisprudence and that in many cases a constitutional restraint has been imposed on retroactive legislation. While there is no constitutional restraint in Illinois, a statute relating to construction (Ill. Rev. Stat. 1953, Ch. 131, par. 4) reads as follows:

449

"No new law shall be construed to repeal a former law, . . . as to any act done, . . . any right accrued, or claim arising under the former law, or in any way whatever to affect any . . . act . . . done, . . . or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding."

The Supreme Court, after reviewing the various grounds on which statutes have been retroactively applied notwithstanding the general principle, came to the conclusion that the time limitation should be applied retroactively on two grounds: first, that the legislature so intended, and secondly, that statutes imposing a time limitation are procedural in character. Orlicki v. McCarthy, 4 Ill.2d 342, 354, 122 N.E.2d 513.

█ It cannot be said that the amendment in question in the instant case is procedural. It is clearly a matter of substance. However, on the intention of the legislature there is much similarity in the instant case to that of the Orlicki case. The language relating to time limitations reads as follows: "Every action hereunder shall be commenced within two years next after the cause of action *accrued*." From this language, with particular emphasis on the word "accrued," the Supreme Court, taking into account the purposes of the amendment, concluded in the Orlicki case that it was the intention of the legislature that the time limitation should be applied retroactively. The amendment which is involved in the instant case reads:

". . . recovery under this act for injury to the person or property of any person or for loss of means of support resulting from death or injury of any person as aforesaid shall not exceed Fifteen Thousand Dollars."

450

A simple reading of this language is that any recovery thereafter to be had in any case in which judgment had not already been rendered should not exceed $15,000. Nor do we see any distinction between the instant case and the Orlicki case when we consider the legislature's purpose in passing the amendment. In the Orlicki case the Supreme Court said that by the time limitation the legislature intended to eliminate the evil of "prolonged liability . . . of dramshop owners and operators, who rarely have any actual knowledge of the events upon which their liability is based." In the amendment we now have under consideration the purpose of the legislature unquestionably was to limit excessive recoveries under the Act in situations described by the courts as giving a plaintiff decided advantages over the party defending. Meidel v. Anthis, 71 Ill. 241. Applying the same method of interpretation to the wording of the statute as that used by the Supreme Court in the Orlicki case, we are bound to recognize that it was the intention of the legislature that the Act in question should apply retroactively.

The question remains, however, whether this would not be a violation of the saving statute heretofore quoted which provides that no new law should be construed to repeal a former law as to any act done, right accrued or claim arising under the former law. In considering this statute the Supreme Court in the Orlicki case held that its application has been limited to "vested rights." Wall v. Chesapeake & Ohio R. Co., 290 Ill. 227; People v. Lindheimer, 371 Ill. 367, 21 N.E.2d 318; Board of Education of Waverly Community Unit School Dist. No. 6 v. Nickell, 410 Ill. 98, 101 N.E.2d 438. The Supreme Court said that what constituted a "vested right" defies precise definition but broadly outlined is as follows, p. 347:

"The concept has been referred to as 'something more than a mere expectation, based upon an anticipated

451

continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enjoyment of the demand, or a legal exception from a demand made by another.' Beutel v. Foreman, 288 Ill. 106; People v. Lindheimer, 371 Ill. 367; Wall v. Chesapeake & Ohio Ry. Co., 290 Ill. 227; Board of Education v. Nickell, 410 Ill. 98."

The Dram Shop Act is unique. As we said in Robertson v. White, 11 Ill.App.2d 177, filed June 26, 1956, it is designed to discipline a legal but ill-favored trade. While it applies a remedy to mitigate the evils and dangers that flow from the liquor traffic, it is a remedy not necessarily based on fault or negligence. The owner of the premises or anyone who leases them, as well as the dramshop keeper, may become liable even though the sale was made to a customer when he was wholly sober, if the customer thereafter by drinks purchased elsewhere became intoxicated. It is therefore penal in a severe sense in its obvious purpose of subjecting to strict discipline those who embark in the liquor traffic and even those who as lessors or owners permit premises to be so used. It is true that in some cases courts have described the Act, insofar as it relates to damages, as remedial; that is to say, recovery is intended to reimburse for losses sustained by the evils growing out of the liquor traffic. This does not change the essentially disciplinary and regulatory character of the Act. In our opinion no vested interest had accrued in this action at the time of default and judgment. Should we then apply the general principle of anti-retroactivity without regard to the statute?

In Theodosis v. Keeshin, 341 Ill. App. 8, 92 N.E.2d 794, we held that the amendment increasing the amount of recovery in death cases from $10,000 to $15,000 was not retroactive. We there stressed the ancient origin, vitality and soundness of principle

which made courts reluctant to apply any statute retroactively. With respect to the argument that the right of action for wrongful death was a statutory creation and therefore the legislature could modify or abolish it retroactively, we pointed out that this theory had its origin in the fallacious application of a doctrine imposed on English law by a casual statement of Lord Ellenborough in a nisi prius decision and that as a matter of fact the action for wrongful death is more firmly rooted in our concept of justice than many actions known to the common law. In this respect it is distinguishable from the Dram Shop Act, however desirable that Act may be as legislative discipline of the liquor traffic.

█ We had occasion to consider this difference in the recent case of Robertson v. White, 11 Ill.App.2d 177, filed June 26, 1956. That was a dramshop case in which the plaintiff sought to have the court create a presumption of loss where an action is brought in behalf of a spouse or by a next of kin who bears a lineal relationship to the deceased. Such a presumption has been created by the courts in cases brought under the Wrongful Death Act. Dukeman v. Cleveland, C. C. & St. L. Ry. Co. (1908), 237 Ill. 104, 86 N. E. 712; Chicago, P. & St. L. R. Co. v. Woolridge (1898), 174 Ill. 330, 51 N. E. 701; Chicago & Alton R. v. Shannon (1867), 43 Ill. 338; City of Chicago v. Scholten (1874), 75 Ill. 468; Wilcox v. Bierd (1828), 330 Ill. 571, 162 N. E. 170; Howlett v. Doglio (1949), 402 Ill. 311, 83 N.E.2d 708. A similar contention was made in the Howlett case and the Supreme Court there distinguished between the language of the Wrongful Death Act, "pecuniary injuries," and the language of the Dram Shop Act, "loss of means of support." The court also pointed out that the Dram Shop Act though remedial in purpose is penal in character, and referred to the language in Meidel v. Anthis, 71 Ill. 241, where

453

the Dram Shop Act was described as "highly penal in its character and introducing remedies unknown to the common law, in which the person prosecuting had decided advantages over the party defending." We held in Robertson v. White, supra, that no presumption such as applies in cases under the Wrongful Death Act should be imported into the Dram Shop Act. The relevancy to the instant case of the language used in the cases referred to lies in this—that where the courts might be zealous in protecting a litigant against divestiture by statute of all or a portion of a claim firmly rooted in our concepts of justice, they will not apply the same zeal to the application of a statute of penal import, regulatory and disciplinary in character.

The recent history of laws with respect to the liquor traffic shows a wide range of public policy passing from tolerance to complete prohibition and then a return to tolerance with a pressure for regulation. Nothing is to be found in our history comparable to the prohibition amendment to the federal constitution, followed within a few years by another amendment repealing the former. This ambivalent attitude toward the use of alcoholic liquors is not confined to our own time or country. It appears in religious ritual, law and literature throughout the ages. Sometimes there is vehement denunciation and at other times devotion, poetic and rapturous. Perhaps the greatest of odes to the fermented product is the Rubaiyat of Omar Khayyam, who lived in a Mohammedan country where the prevailing religion prohibited and to this day still prohibits its use. In such a volatile and unstable situation courts can do no more than interpret as nearly as possible the spirit and word of the prevailing written law.

We have considered the argument strongly urged upon us by plaintiff, that decisions in compensation cases and particularly that of Stanswky v. Industrial

Commission, 344 Ill. 436, 176 N. E. 898, are controlling in the instant case. It is argued that workmen's compensation cases, like dramshop cases, are statutory proceedings and therefore are especially pertinent on the question of retroactivity. However, we have rested our decision in the instant case upon the regulatory, disciplinary and penal character of the Dram Shop Act which we think is the sound basis for a distinction between that Act and other legislation.

There is pending in this court an appeal by parties interested in the premises in which the tavern is located from a decree imposing a lien on the premises for the amount of the judgment. That case, it appears to us, is entirely dependent upon the outcome of the instant case and will therefore be held pending such outcome.

The judgment of the trial court is reversed and the cause is remanded, with directions to enter a judgment for $15,000 unless plaintiff shall within 30 days enter a remittitur in this court of $10,000, or unless all parties shall within 30 days stipulate to the entry of a judgment in this court for $15,000 without prejudice to the right of any party to petition the Supreme Court for leave to appeal.

Judgment reversed and cause remanded with directions, unless remittitur is entered or stipulation is made within 30 days, as before stated.

ROBSON, P. J. and McCORMICK, J., concur.